HOFFMAN & FORDE, ATTORNEYS AT LAW
DANIEL R. FORDE (248461)
MATTHEW B. BERNSTEIN (292591)
3033 Fifth Avenue, Suite 225
San Diego, CA 92103
Telephone: (619) 546-7880
Facsimile: (619) 546-7881
dforde@hoffmanforde.com
mbernstein@hoffmanforde.com

POLEK LAW
FRANK J. POLEK (167852)
701 B Street, suite 1110
San Diego, CA 92101
Telephone: (619) 550-2455
Facsimile: (619) 274-8166
frank@poleklaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UN BOON KIM, on behalf of Herself, All Others Similarly Situated and the General Public;<br><br>    Plaintiffs,<br><br>v.<br><br>SHELLPOINT PARTNERS, LLC dba SHELLPOINT MORTGAGE SERVICING,<br><br>    Defendants. | Case No.: **'15CV0611 LAB BLM**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) **VIOLATIONS OF THE TRUTH IN LENDING ACT;**<br>(2) **VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2924.11;**<br>(3) **BREACH OF WRITTEN CONTRACT;**<br>(4) **VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200; AND**<br>(5) **DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Un Boon Kim ("Plaintiff" or "Kim") brings this action on behalf of herself and all others similarly situated against defendant Shellpoint Partners, LLC dba Shellpoint Mortgage Servicing ("Shellpoint" or "Defendant"). Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.     This action seeks redress for damages caused by Shellpoint's numerous violations of California and Federal laws related to the servicing of home mortgages.

2.     Shellpoint's improper practices include, among other things, failing to provide consumers with accurate and complete monthly periodic mortgage statements and collecting improper/unlawful fees associated with the consumers' mortgages. As a result, Plaintiff and others similarly situated suffered substantial economic harm.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 because a substantial part of this action arises under the laws of the United States.

4.     This Court also has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action in which at least one

member of the class of plaintiffs is a citizen of a State different from any defendant.

5.     This Court also has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Shellpoint:

    (a)    is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

    (b)    does substantial business in this district; and

    (c)    is subject to personal jurisdiction in this district.

## THE PARTIES

7.     At all times relevant, Plaintiff resided and continues to reside in San Diego, California.  At all times relevant herein, Plaintiff owned a single-family residence, located within the City San Diego ("Subject Property").

8.     Shellpoint is a mortgage lender and servicer with headquarters in Greenville, South Carolina.  Shellpoint Mortgage Servicing is a subsidiary of Shellpoint Partners, LLC and is currently registered to do business in the State of California and does business in California.  California represents approximately

25% of Shellpoint's servicing business, which totals nearly $11.35 billion in loans. Shellpoint produces mortgage loans on a national scale and generally performs the ongoing servicing functions related to the mortgage loans that it produces. Shellpoint also purchases mortgages sold on the secondary market and services the mortgages it purchases. Shellpoint at times modifies, refinances, or otherwise changes the mortgages it produces and/or services. Shellpoint is responsible, in whole or in part, for the wrongs alleged herein.

## **FACTUAL ALLEGATIONS**

9.      On or about March 17, 2004, Plaintiff and her late husband took out a home loan for approximately $400,000.00 ("the Loan") and signed a promissory note, a true and correct copy of which is attached here to as "Exhibit 1" ("the Promissory Note"), which is an exemplar of those of the class as is relevant to this action.

10.      The Loan is secured by a deed of trust lien on the Subject Property in favor of Moneyline Lending Services, Inc., a corporation organized and existing under the laws of the State of California, which recorded a Deed of Trust on March 25, 2005 – document number 2004-0245845 (the "DOT"). A true and correct copy of the DOT is attached hereto as "Exhibit 2," and is an exemplar of those of the class alleged herein.

11.     Subsequently, the Loan was transferred and/or sold to Bank of America, N.A. ("Bank of America"), which later transferred and/or sold the loan to Resurgent Mortgage Servicing ("Resurgent"). Resurgent then transferred and/or sold the Loan to Shellpoint on or about February 2014. Beginning in or around February 2014, Shellpoint serviced the Loan.

12.     In response to information touting loan modification and other loss mitigation programs, Plaintiff started to communicate with the servicers of the Loan regarding loss mitigation options. Plaintiff worked diligently to ensure that Bank of America, Resurgent, and Shellpoint received the documents requested of her and asked the servicers countless times whether further documents were required. Eventually, Plaintiff was approved for the Home Affordable Modification Program on or about August 22, 2014.

13.     On or about August 29, 2014, Plaintiff submitted the executed Home Affordable Modification Agreement to Shellpoint, receipt of which was confirmed in writing by Shellpoint on or about October 1, 2014, a true and correct copy of which is attached hereto as "Exhibit 3" ("the Modification"). The Modification is an exemplar of those of the class as alleged herein.

14.     Plaintiff received her December 2014 monthly mortgage statement from Shellpoint on or about November 15, 2014, which reflected the modified terms of the mortgage. However, included in the amount due for December 2014

was a $250.00 charge entitled "Total fees and Charges" and described as a "Trustee Asses" (hereinafter the "Foreclosure Fee"). Payments of the Foreclosure Fee along with the regular monthly mortgage payment were due on or before December 16, 2014. A true and correct copy of the December 2014 monthly mortgage statement is attached hereto as "Exhibit 4." It is an exemplar of those of the class as alleged herein.

15.     In order to obtain a better explanation of the basis of the Foreclosure Fee, Shellpoint was contacted via telephone on December 2, 2014. A representative of Shellpoint named "Noah" explained that the Foreclosure Fee related to Shellpoint's "legal fees for the foreclosure." Knowing that no foreclosure had occurred, the charge was protested. Noah then indicated that the Loan was "referred to an attorney for foreclosure on August 17, 2014" and that even though no foreclosure resulted, Plaintiff was still responsible for "the associated legal fees up to the point of modification."

16.     Not wanting to become delinquent on her monthly mortgage obligations, Plaintiff remitted her regular December 2014 payment as well as the Foreclosure Fee to Shellpoint on December 10, 2014, prior to the December 16, 2014 deadline.

17.     The December 2014 monthly statement did not indicate the interest rate applicable to the Modification for which Plaintiff would be paying nor when

the interest rate would change, if at all.  The December 2014 monthly statement

also did not the total of all payments received by Shellpoint from Plaintiff since the

beginning of the calendar year or the amount of any late fee should the regular

payment due on this statement not be paid within the applicable time period.

      18.    On or about December 16, 2014, Plaintiff received her monthly

mortgage statement for the month of January 2015 from Shellpoint.  A true and

correct copy of this monthly statement is attached as "Exhibit 5."  It is an exemplar

of those of the class as alleged herein.  The January 2015 statement confirmed

receipt of Plaintiff's December 2014 regular payment as well as the Foreclosure

Fee paid on December 10, 2014.  However, this statement now referred to the

Foreclosure Fee as a "Principal Only Payment."  In addition, this monthly

statement reflected a $250.00 charge due on or before January 16, 2015 classified

as an "Overdue Payment" ("Late Fee #1"), along with the regular monthly

payment for January 2015.  Late Fee #1 was charged despite Plaintiff remitting the

preceding month's regular payment and the Foreclosure Fee within the allowable

pay period listed on the December 2014 statement.  Nonetheless, afraid to be

considered in default, Plaintiff remitted her January 2015 regular payment and Late

Fee #1 on January 12, 2015.

      19.    The January 2015 monthly statement did not indicate the interest rate

applicable to the Modification for which Plaintiff would be paying nor when the

interest rate would change, if at all. The January 2015 monthly statement also did not state the total of all payments received by Shellpoint from Plaintiff since the beginning of the calendar year or the amount of any late fee should the regular payment due on this statement not be paid within the applicable time period.

20.     On or about January 16, 2015, Plaintiff received her February 2015 monthly mortgage statement from Shellpoint. A true and correct copy of this monthly statement is attached as "Exhibit 6." It is an exemplar of those of the class as alleged herein. This statement confirmed receipt of Late Fee #1 as well as Plaintiff's January 2015 regular payment made on January 12, 2015. Once again, however, Shellpoint labeled the receipt of Late Fee #1 as a "Principal Only Payment." Further, despite Plaintiff remitting the preceding month's regular payment Late Fee #1 within the allowable pay period listed on the January 2015 statement, the February 2015 statement reflected another $250.00 "Overdue Payment" charge ("Late Fee #2"). Plaintiff's February 2015 "Regular Payment" and Late Fee #2 were due on or before February 16, 2015. Plaintiff submitted payment of her February 2015 regular payment and Late Fee #2 prior to the February 16, 2015 due date.

21.     The February 2015 monthly statement did not indicate the interest rate applicable to the Modification for which Plaintiff would be paying nor when the interest rate would change, if at all. The February 2015 monthly statement also did

not state the total of all payments received by Shellpoint from Plaintiff since the beginning of the calendar year or the amount of any late fee should the regular payment due on this statement not be paid within the applicable time period.

22.     On or about February 13, 2015, Plaintiff received her March 2015 monthly mortgage statement from Shellpoint. A true and correct copy of this monthly statement is attached as "Exhibit 7." It is an exemplar of those of the class as alleged herein. This statement confirmed receipt of Late Fee #2 as well as Plaintiff's February 2015 regular payment made on February 9, 2015. Once again, however, Shellpoint labeled the receipt of Late Fee #2 as a "Principal Only Payment." Further, despite Plaintiff remitting the preceding month's regular payment within the allowable pay period listed on the February 2015 statement, the March 2015 statement reflected another $250.00 "Overdue Payment" charge ("Late Fee #3"). Plaintiff's March 2015 "Regular Payment" and Late Fee #3 are due on or before March 16, 2015. Plaintiff will submit payment of her March 2015 regular payment and Late Fee #3 prior to the March 16, 2015 due date.

## MAKING HOME AFFORDABLE PROGRAM

23.     The Making Home Affordable Program ("MHA") was enacted for the purpose of helping homeowners avoid foreclosure, stabilizing the nation's housing market, and improving the country's economy. MHA requires participating mortgage servicers, like Shellpoint, to give borrowers the meaningful opportunity

to potentially reduce their monthly mortgage payments following a period of financial hardship in order to avoid foreclosure. One of the foreclosure alternatives offered under MHA is the Home Affordable Modification Program ("HAMP"), which allows eligible borrowers to modify the terms of their mortgage in order to make the loan more affordable given the borrowers' particular financial circumstances/difficulties.

24. As part of MHA and HAMP, Guideline 3.1.1 provides in pertinent part, "[a] servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure sale unless and until ... [t]he borrower is evaluated for HAMP and is determined to be ineligible for the program."

25. As part of MHA and HAMP, Guideline 9.3.3 provides in pertinent part, "[s]ervicers may not charge the borrower to cover the administrative costs incurred in connection with HAMP. The servicer pays and will not be reimbursed for any actual out-of-pocket expenses, including, but not limited to, any required notary fees, recordation fees, title costs, property valuation fees, credit report fees, or other allowable and documented expenses."

## THE CALIFORNIA HOMEOWNER'S BILL OF RIGHTS

26. Following the downturn of the economy in 2007 after the real estate market crashed, the federal government along with numerous states began requiring banks and mortgage lenders/servicers to substantively change and

improve their servicing standards relating to mortgages, loan modifications, and foreclosure prevention.  Indeed, according the California Legislative Counsel's Digest, the California Legislature found that:

> (a) California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California.

> (b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

COMPLAINT

(c) This act is necessary to provide stability to
California's statewide and regional economies and
housing market by facilitating opportunities for
borrowers to pursue loss mitigation options.

27.     On July 11, 2013, California Governor Jerry Brown signed into law

the "Homeowner's Bill of Rights" AB 278/SB 900 (the "Homeowner's Bill of

Rights"). Attorney General Kamala Harris, along with the leadership of both the

Assembly and the Senate sponsored the Homeowner's Bill of Rights. The

Homeowner's Bill of Rights took effect January 1, 2013 and amended the

California Civil Code to make significant changes to non-judicial foreclosure

protocols and servicing processes for first lien residential mortgage loans.

28.     The purpose of the Homeowner's Bill of Rights is to provide

protections for borrowers facing foreclosure, reform many aspects of the

foreclosure process, and to ensure that borrowers' mortgages are fairly and

accurately serviced.

29.     As part of the Homeowner's Bill of Rights, California Civil Code

Section 2924.11(e), provides in pertinent part, "[t]he mortgage servicer shall not

charge any application, processing, or other fee for a first lien loan modification or

other foreclosure prevention alternative."

30.     As part of the Homeowner's Bill of Rights, California Civil Code

Section 2924.11(f), provides in pertinent part, "[t]he mortgage servicer shall not

collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised."

## TRUTH-IN-LENDING ACT

31.     The Truth-in-Lending Act ("TILA"), which is contained in Title I of the Consumer Credit Protection Act, is a federal law that was enacted on May 29, 1968. TILA protects consumers in their dealings with lenders and creditors. TILA mandates that credit and charge companies disclose certain information with regards to borrowers' accounts. TILA applies to most types of credit, including closed-end credit (such as mortgages) and open-ended credit (such as credit cards).

32.     As part of TILA, 15 U.S.C. §1639(a)(2) provides in pertinent part, "the creditor shall disclose – (A) in the case of a credit transaction with a fixed rate of interest, the annual percentage rate and the amount of the regular monthly payment; or (B) in the case of any other credit transaction, the annual percentage rate of the loan, the amount of the regular monthly payment, a statement that the interest rate and monthly payment may increase, and the amount of the maximum monthly payment, based on the maximum interest rate allowed pursuant to section 3806 of title 12."

33.     As part of TILA, Section 1026.41(d)(1)(ii) of the Code of Federal

Regulations provides in pertinent part, "[t]he periodic statement required by this section shall include ... [t]he amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received."

34. As part of TILA, Section 1026.41(d)(3)(ii) of the Code of Federal Regulations provides in pertinent part, "[t]he periodic statement required by this section shall include ... [t]he total of all payments received since the beginning of the calendar year."

35. As part of TILA, Section 1026.41(d)(4) of the Code of Federal Regulations provides in pertinent part, "[t]he periodic statement required by this section shall include ... [a] list of all the transaction activity that occurred since the last statement."

36. As part of TILA, Section 1026.41(d)(7)(iii) of the Code of Federal Regulations provides in pertinent part, "[t]he periodic statement required by this section shall include ... [t]he date after which the interest rate may next change."

37. As part of TILA, 15 U.S.C. Section 1640 provides in pertinent part, "any creditor who fails to comply with any requirement under [TILA] ... is liable in an amount equal to the sum of – (1) any actual damage sustained by such person as a result of the failure; (2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction ... (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan

that is secured by real property or a dwelling, not less than $400 or greater than

$4,000; or (B) in the case of a class action, such amount as the court may allow,

except that as to each member of the class no minimum recovery shall be

applicable, and the total recovery under this subparagraph in any class action or

series of class actions arising out of the same failure to comply by the same

creditor shall not be more than the lesser of $1,000,000 or 1 per centum of the net

worth of the creditor; (3) in the case of any successful action to enforce the

foregoing liability or in any action in which a person is determined to have a right

of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action,

together with a reasonable attorney's fee as determined by the court; and (4) in the

case of a failure to comply with any requirement under section 1639 of this title,

paragraph (1) or (2) of section 1639(c), or section 1639(c)(a) of this title, an

amount equal to the sum of all finance charges and fees paid by the consumer,

unless the creditor demonstrates that the failure to comply is not material."

## THE DEED OF TRUST

38.    The DOT constitutes a contract governing the respective rights of

Plaintiff and the holder and/or servicer of the Loan concerning, among other

things, rights pertaining to the Subject Property. The DOT is a standardized

adhesionary contract prepared, approved or purchased by Shellpoint. The DOT

provides in pertinent part: "This Security Instrument shall be governed by federal

law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." Additionally, the DOT provides, in pertinent part: "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable law." The DOT defines Applicable Law as: "[A]ll controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."

## THE PROMISSORY NOTE

39.     The Promissory Note constitutes a contract governing the respective rights of Plaintiff and the holder and/or servicer of the Loan concerning, among other things, rights pertaining to the Subject Property. The Promissory Note is a standardized adhesionary contract prepared, approved or purchased by Shellpoint. The Promissory Note provides in pertinent part: "[i]f the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, [the borrower] will pay a late charge to the Note Holder. The amount of the charge will be five percent (5.00%)% of [the borrower's] overdue payment of principal and interest."

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this lawsuit on behalf of herself and the proposed class members under Rule 23(b)(1), Rule 23(b)(2), and Rule 23(b)(3), alternatively, of the Federal Rules of Civil Procedure. The proposed class and subclasses consist of:

All persons who have a residential mortgage loan agreement relating to real property located within California and which is serviced by Shellpoint, and who either:

**Subclass 1:** received monthly billing statements from Shellpoint that did not show the interest rate applicable to the loan, the total of all payments received by Shellpoint since the beginning of the calendar year, or the amount of any late fee should the regular payment due not be paid by a date specified;

**Subclass 2:** were charged late fees in violation of their Promissory Note and/or their DOT

**Subclass 3:** received a first lien loan modification and who were charged fees in violation of California Civil Code §2924.11, HAMP Guideline 3.1.1 and HAMP Guideline 9.3.3.

41.     Excluded from the class are defendants and any of their officers, directors and employees.

42. *Numerosity*. The members of the class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains thousands of members. While the precise number of class members is unknown to Plaintiff, it is known to Shellpoint.

43. *Existence and Predominance of Common Questions of Law and Fact*. Common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual class members. All members of the class have been subject to the same conduct and their claims are based on standard form contracts. The common legal and factual questions include, but are not limited to, the following:

        (a)    whether Shellpoint's alleged conduct breaches the DOT and other similar mortgage security agreements;

        (b)    whether Shellpoint's alleged conduct breaches the Promissory Note and other similar loan agreements;

        (c)    whether the alleged conduct constitutes violations of the laws asserted herein;

        (d)    whether Plaintiff and class members have sustained monetary or property loss and the proper measure of that loss; and

        (e)    whether Plaintiff and class members are entitled to declaratory and injunctive relief as to Shellpoint.

44. **_Typicality_**. Plaintiff's claims are typical of the claims of the members of the class in that they are members of the class that they seek to represent.

45. **_Adequacy of Representation_**. Plaintiff will fairly and adequately protect the interests of the members of the class. Plaintiff has retained counsel experienced in the prosecution of this type of class action litigation. Plaintiff has no adverse or antagonistic interests to those of the class.

46. **_Superiority_**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The damages or other financial detriment suffered by individual class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Shellpoint. Further, the adjudication of this action presents no unusual management difficulties.

47. Unless a class is certified, Shellpoint will retain monies received as a result of their conduct that was taken from Plaintiff and proposed class members. Shellpoint has acted or refused to act on grounds that are generally applicable to the class so that declaratory relief is appropriate to the class as a whole.

## FIRST CLAIM FOR RELIEF

## Violations of the Truth-in-Lending Act

48. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

49. At all times pertinent to this Complaint, Shellpoint was the assignee creditor of the mortgage, the Note, and underlying debt that Plaintiff entered into with Moneyline Lending Services, Inc.

50. At all times pertinent to this Complaint, Shellpoint was a "servicer" within the meaning of Regulation X, 12 C.F.R. §1024.2(b) and Regulation Z, 12 C.F.R. §1026.36(c). At all times pertinent to this complaint, Shellpoint was not a "small servicer" within the meaning of the exemption provided by 12 C.F.R. §1026.41(e)(4).

51. At all times pertinent to this Complaint, the Loan was a closed-end consumer transaction secured by a dwelling within the meaning of Regulation Z, 12 C.F.R. §1026.

52. As the assignee creditor of the Loan, Shellpoint was required to comply with TILA and its implementing regulation.

53. The monthly mortgage statements that Shellpoint provided Plaintiff are "disclosure statements" within the meaning of 15 U.S.C. 1641(a).

54. Shellpoint violated its obligations to Plaintiff under TILA. Among other violations, Shellpoint violated 15 U.S.C. §1639 and 12 C.F.R. §1026.41(d)

by failing to send Plaintiff monthly periodic statements that accurately disclose the monthly charges and fees owed on the Loan. Shellpoint's monthly periodic statements violated these Statutes as they: (A) failed to specify the amount to be charged as a late fee should Plaintiff make her regular monthly payment after the applicable period of time (12 C.F.R. §1026.41(d)(1)(ii)); (B) failed to indicate the total payments received from Plaintiff since the beginning of the calendar year (12 C.F.R. §1026.41(d)(3)(ii)); (C) failed to list all the transaction activity that occurred since the last statement (12 C.F.R. §1026.41(d)(4)); and (D) failed to specify the day after which Plaintiff's interest rate may next change (15 U.S.C. §1639 and 12 C.F.R. §1026.41(d)(7)(iii)).

55.     Plaintiff has suffered actual damage as a result of these violations as more particularly described above and herein. Plaintiff is entitled to an award of statutory damages, including reasonable attorneys' fees and costs, as allowed under 15. U.S.C. §1640 of TILA.

## SECOND CLAIM FOR RELIEF

### Violations of California Civil Code § 2924.11

56.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

57.     As part of the Homeowner's Bill of Rights, California Civil Code Section 2924.11(e) provides in pertinent part, "[t]he mortgage servicer shall not

charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative."

58. As part of the Homeowner's Bill of Rights, California Civil Code Section 2924.11(f) provides in pertinent part, "[t]he mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevent alternative is being evaluated or exercised."

59. Shellpoint was evaluating Plaintiff for a first lien loan modification beginning in January 2014 and Plaintiff's application was under consideration for a loan modification until at least August 29, 2014.

60. On or about August 29, 2014, Plaintiff was approved for and entered into the Modification by and with Shellpoint under HAMP.

61. The Foreclosure Fee, which was paid by Plaintiff on December 10, 2014, is improper under the California Homeowners Bill of Rights, specifically California Civil Code Section 2924.11(e). This code section prohibits mortgage servicers from charging "any application, processing, or other fee for a first lien loan modification." The Foreclosure Fee constitutes an "other" fee under Section 2924.11(e).

62.     Late Fee #1, Late Fee #2, and Late Fee #3 are in violation of the

California Homeowners Bill of Rights, specifically California Civil Code Section

2924.11(f), which prohibits mortgage servicers from collecting "late fees" during

the time a "borrower is making timely modification payments." Plaintiff's

payments of her regular monthly mortgage obligations were never late pursuant to

the terms of the monthly statements of the Modification or pursuant to the terms of

the Note.

63.     Because Plaintiff was forced to pay these improper fees (the

Foreclosure Fee, Late Fee #1, Late Fee #2, and Late Fee #3), Plaintiff incurred

significant out-of-pocket expenses, including the retaining of an attorney to dispute

these fees.

64.     The foregoing conduct was done purposefully, negligently and/or

without regard to Plaintiff's and members of the class' rights under California law.

Based on the foregoing, Shellpoint's conduct constitutes an uncorrected violation

of California Civil Code Section 2924.11. As a result of Shellpoint's violations of

California Civil Code Section 2924.11, Plaintiff and members of the class have

incurred actual damages, in an amount to be determined at trial. Moreover,

Plaintiff and members of the class are entitled to injunctive relief to enjoin

continuing material violations of California Civil Code Section 2924.11,

reasonable attorneys' fees, and costs associated with the prosecution of this action.

# THIRD CLAIM FOR RELIEF

## Breach of Written Contract

65.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

66.     Plaintiff and class members, and Shellpoint on the other, are parties to a written, written, standardized residential mortgage loan agreement – the DOT. Under the DOT, Shellpoint agreed to comply with, among other things, applicable California and federal law.

67.     Plaintiff and class members gave consideration that was fair and reasonable.  All conditions precedent to Shellpoint's liability under the DOT have been performed by Plaintiff and class members.

68.     Shellpoint violated California Civil Code §2924.11, California Business and Professions Code §17200, 15 U.S.C. §1639(a)(2), and 12. C.F.R. §1026.41(d) – without Plaintiff's and class members' knowledge and/or consent.

69.     Additionally, the DOT provides, in pertinent part: "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable law."  The fees charged by Shellpoint to Plaintiff, as alleged herein, are prohibited by Applicable Law, specifically, California Civil Code §2924.11, California Business and Professions Code §17200, 15 U.S.C. §1639(a)(2), and 12. C.F.R. §1026.41(d).

70.     Plaintiff and class members, and Shellpoint on the other, are also parties to another written, written, standardized residential mortgage loan agreement – the Promissory Note.  All conditions precedent to Shellpoint's liability under the Promissory Note have been performed by Plaintiff and class members.  Under the Promissory Note, monthly payments were due within fifteen (15) calendar days after the date the payments are due.  Should the monthly payments not be received within fifteen (15) calendar days of their applicable due dates, the holder of the note is entitled to charge the borrower a late fee in an amount equal to five percent (5%) of the overdue payment of principal and interest.

71.     Shellpoint charged Plaintiff Late Fee #1, Late Fee #2, and Late Fee #3 despite Plaintiff remitting her regular payments of principal and interest for both December 2014 and January 2015 within fifteen (15) calendar days of the applicable due dates.  Further, the late fees charged by Shellpoint to Plaintiff were in the amount of $250.00 each.  Pursuant to the Promissory Note, had Plaintiff's payments been late (which they were not), Shellpoint would only be entitled to charge Plaintiff a late fee in an amount not exceeding $92.03, as Plaintiff's regular monthly payment of principal and interest is $1,840.65 (five percent (5%) of $1,840.65 is $92.03).

72.     As a result of Shellpoint's breach of the DOT and the Promissory Note, Plaintiff and class members suffered and continue to suffer reasonable and foreseeable damages resulting from such breaches, including, costs and expenses incurred as a result of the charges included in their monthly mortgage payments to Shellpoint and other damages in an amount to be proven at trial.

73.     Alternatively, Plaintiff seeks specific performance of the DOT and the Promissory Note because the legal remedies are inadequate.

74.     Finally, pursuant to the DOT, the Promissory Note, California law, and federal law, Plaintiff is entitled to reasonable attorneys' fees in enforcing her contractual rights under the DOT and the Promissory Note.

## FOURTH CLAIM FOR RELIEF

### Violations of California Business and Professions Code § 17200

75.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

76.     The Court has jurisdiction over this action pursuant to Business and Professions Code Section 17200 et. seq., and specifically Business and Professions Code Section 17203 which provides that any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the Court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice

which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

77.     At all times relevant hereto, Shellpoint was a lender and/or servicer who was in the business of providing (or servicing) residential mortgages to the general public and were acting within the scope of that business with regard to the Loan provided to Plaintiff.

78.     As set forth more fully above, Shellpoint engaged in unlawful and/or unfair business practices with respect to mortgage loan servicing and the foreclosure of residential real property by, among other things, the following:

      a.     Violating California Civil Code §2924.11(e) by charging an application, processing, or other fee for a first lien loan modification;

      b.     Violating California Civil Code §2924.11(f) by collecting late fees for periods during which the borrower was making timely modification payments;

      c.     Violating 15. U.S.C. §1641 by failing to disclose annual interest percentage rate, that the interest rate and monthly payment may increase, and/or the amount of the maximum monthly payment;

d.    Violating 12 C.F.R. §1026.41(d) by failing to provide monthly periodic statements accurately disclosing the monthly charges and fees owed on the Loan, including, but not limited to, failing to specify the amount to be charges as a late fee should Plaintiff make her regular monthly payment after the applicable period of time, failing to indicate the total payments received since the beginning of the calendar year, failing to list all the transaction activity that occurred since the last statement, and failing to specify the day after which interest rates may next change;

e.    Violating the common law, including breaches of its DOT and Promissory Note contracts with Plaintiff and members of the class; and

f.    Violating public policy such as MHA Guidelines 3.1.1 and 9.3.3 by referring the Loan to foreclosure before determining borrowers to be ineligible for HAMP and charging administrative costs in connection with HAMP.

79.    Shellpoint's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code Section 17200, *et seq*. in that its conduct is substantially injurious to consumers, offends public policy such as MHA

Guidelines 3.1.1 and 9.3.3, and is immoral, unethical, oppressive, and

unscrupulous as the gravity of the conduct outweighs any alleged benefits

attributable to such conduct.

80.     As part of MHA, Guideline 3.1.1 provides in pertinent part, "[a]

servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure

sale unless and until ... [t]he borrower is evaluated for HAMP and is determined to

be ineligible for the program." The Foreclosure Fee stemmed from cost of

Shellpoint having to refer the Loan to a foreclosure attorney or trustee. As

indicated herein, Shellpoint offered Plaintiff a modification of the Loan, which she

accepted. Therefore, Plaintiff was not determined to be ineligible for HAMP under

the MHA program and Shellpoint had no authority to refer the Loan to foreclosure.

As such, Shellpoint unfairly collected the Foreclosure Fee from Plaintiff.

81.     In additional, MHA Guideline 9.3.3 provides in pertinent part,

"[s]ervicers may not charge the borrower to cover the administrative costs incurred

in connection with HAMP. The servicer pays and will not be reimbursed for any

actual out-of-pocket expenses, including, but not limited to, any required notary

fees, recordation fees, title costs, property valuation fees, credit report fees, or

other allowable and documented expenses." By charging Plaintiff the Foreclosure

Fee, Late Fee #1, Late Fee #2, and Late Fee #3, Shellpoint charged Plaintiff fees in

violation of Guidelines 9.3.3.

82.     Further, the terms of the Note indicate that if Plaintiff, as the

borrower, does not remit payment of the "full amount of any monthly payment by

the end of fifteen (15) calendar days after the date it is due," Plaintiff will be

charged "five percent (5.00%)% of [her] overdue payment of principal and

interest." Because Plaintiff's regularly monthly payment of principal and interest

under the Modification equals $1,840.65, any late fee charge stemming from an

overdue payment would be limited to an amount of $92.03 (5% of $1,840.65).

Therefore, Late Fee #1, Late Fee #2, and Late Fee #3 were improper and constitute

unfair business practices under California Business and Professions Code Section

17200.

83.     Plaintiff and the class reserve the right to allege other violations of

law which constitute other unlawful business acts or practices. Such conduct is

ongoing and continues to this date.

84.     There were reasonably available alternatives to further Shellpoint's

legitimate business interests, other than the conduct described herein.

85.     Shellpoint's conduct caused and continues to cause substantial injury

to Plaintiff and the other class members. Plaintiff has suffered injury in fact and

has lost money as a result of the unfair conduct as described herein.

86.     As a direct, proximate and foreseeable result of the unfair and

unlawful conduct of Shellpoint, its business acts and practices have caused injury

to Plaintiff, the other members of the class, and the general public. Shellpoint's conduct continues to cause substantial injury to Plaintiff and the other class members. Therefore, Plaintiff and the other members of the class are also entitled to injunctive relief pursuant to Business & Professions Code Section 17203 in order to force Shellpoint to: (1) cease violating the above detailed laws; and (2) to abide by the terms of the DOT and Promissory Note.

## FIFTH CLAIM FOR RELIEF

### Declaratory Relief

87.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

88.     A controversy has arisen and now exists between Plaintiff and class members on the one hand and Shellpoint on the other. The controversy between the parties concerns the existing, standardized mortgage agreements between the parties and the parties' rights and duties under those contracts and Shellpoint's compliance with California Civil Code §2924.11, 15 U.S.C. §1639, and 12 C.F.R. §1026.41. Plaintiff and class members contend that pursuant to the contracts' terms, defendant Shellpoint violates the contract by not complying with California Civil Code §2924.11, 15 U.S.C. §1639, and 12 C.F.R. §1026.41. Shellpoint disputes these contentions.

89.     Plaintiff and class members request a judicial determination of their rights and duties, and the rights and duties of absent class members and a declaration as to whether Shellpoint violates the contracts by not complying with California Civil Code §2924.11, 15 U.S.C. §1639, and 12 C.F.R. §1026.41.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the class as requested herein;

B.     Awarding Plaintiff and the proposed class members damages;

C.     Awarding restitution to Plaintiff and the proposed class members;

D.     Awarding declaratory and injunctive relief as permitted by law or equity, including a judicial determination of the parties' rights and duties under the contract, enjoining defendants from continuing the unlawful practices as set forth herein (including the commencement and continuation of non-judicial foreclosure), ordering specific performance by Shellpoint, and directing Shellpoint to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Shellpoint by means of any act or practice declared by this Court to be wrongful;

E.     Awarding attorneys' fees and costs; and

F.     Providing such further relief as may be just and proper.

Dated: March 17, 2015                          Respectfully submitted,
                                               **HOFFMAN & FORDE**


                                               _____/s/ Daniel Forde_____
                                               DANIEL FORDE
                                               3033 Fifth Avenue, Suite 225
                                               San Diego, CA 92103
                                               P: (619) 546-7880
                                               F: (619) 546-7881
                                               E: dforde@hoffmanforde.com

                                               Attorneys for Plaintiffs

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 17, 2015                          Respectfully submitted,
                                               **HOFFMAN & FORDE**


                                               _____/s/ Daniel Forde_____
                                               DANIEL FORDE
                                               3033 Fifth Avenue, Suite 225
                                               San Diego, CA 92103
                                               P: (619) 546-7880
                                               F: (619) 546-7881
                                               E: dforde@hoffmanforde.com

                                               Attorneys for Plaintiffs