BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
Chang@BlankRome.com
Elizabeth B. Kim (SBN 252408)
Ekim@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

BLANK ROME LLP
Laura E. Vendzules (*pro hac vice*)
LVendzules@BlankRome.com
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103
Telephone: 215.569.5500
Facsimile: 215.569.5555

Attorneys for Defendant
NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT
MORTGAGE SERVICING (ERRONEOUSLY SUED
AS "SHELLPOINT PARTNERS, LLC
DBA SHELLPOINT MORTGAGE SERVICING")

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UN BOON KIM, on behalf of Herself, All Others Similarly Situated and the General Public;<br><br>                    Plaintiffs,<br><br>    vs.<br><br>SHELLPOINT PARTNERS, LLC dba SHELLPOINT MORTGAGE SERVICING,<br><br>                    Defendants. | Case No. 15-CV-00611-LAB-BLM<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT**<br><br>[*Filed concurrently with Notice of Motion, Request for Judicial Notice, and Declaration of Olivia Miller*]<br><br>Date:       July 20, 2015<br>Time:       11:15 a.m.<br>Location: Courtroom 14A (14th Floor)<br>              Suite 1410<br>              333 West Broadway<br>              San Diego, CA 92101<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................... 1

II.    Statement of Facts ................................................................. 3

    A.    Plaintiff Executes the Deed of Trust ................................. 3

    B.    Plaintiff's Default and Subsequent Foreclosure Proceeding .................... 3

    C.    Plaintiff Is Approved for a Loan Modification in August 2014 ............... 4

    D.    The Trustee Assess ..................................................... 4

    E.    Procedural History and Plaintiff's First Amended Complaint ............... 5

III.   STANDARD OF REVIEW ................................................... 6

    A.    Rule 12(b)(1) ............................................................ 6

    B.    Rule 12(b)(6) ............................................................ 7

    C.    Rule 12(f) ................................................................. 8

    D.    Rule 23(d)(1)(D) ....................................................... 9

IV.    ARGUMENT ...................................................................... 10

    A.    Plaintiff Lacks Article III Standing to Bring the TILA, UCL, HOBR, Breach of Contract or Declaratory Relief Claims ..................... 10

        1.    Plaintiff's Billing Statements Confirm She Has No Standing Under TILA or Subclass 1 ..................................... 10

        2.    Plaintiff Has No Standing Under Her HOBR, UCL, Breach of Contract or Declaratory Relief Claims and She Cannot, Therefore, Represent Subclass 2 or 3 ........................... 11

    B.    Each of Plaintiff's Claims Fail Because She Has Not Provided Shellpoint with the Required Written Notice and Cure Period Prior to Filing Her Action .................................................. 13

    C.    Plaintiff's TILA Claim (Count I) Should Be Dismissed, as TILA Provides No Private Right of Action Against Mortgage Servicers Such as Shellpoint ..................................................... 14

    D.    Plaintiff's HOBR Claim (Count II) Should Be Dismissed Because the Trustee Assess Cannot Be Considered an Administrative HAMP Fee ............................................................ 15

    E.    Plaintiff's Breach of Contract Claim (Count III) Should Be Dismissed Because Shellpoint Did Not Breach any Term of the LMA in Charging the Trustee Assess ................................... 15

i

F.   Plaintiff's UCL Claim (Count IV) Should Be Dismissed, as Shellpoint's Actions Were Lawful Exercises of Shellpoint's Contractual Right to Pursue Foreclosure upon Default .......................... 17

1.   Plaintiff Has Not Properly Stated a UCL Claim Under Either the Unlawful or Unfair Prongs of UCL ........................................ 18

2.   Plaintiff's UCL Claim Based on Alleged Violations of TILA and HAMP Guidelines Should Be Dismissed as a Backdoor Effort to Enforce Compliance with Regulations that Provide Plaintiff No Private Right of Action ............................................. 19

G.   Plaintiff's Claim for Declaratory Relief (Count V) Should Be Dismissed, as Plaintiff Cannot State a Valid Claim Against Shellpoint ............................................................................... 20

H.   In the Alternative, Paragraphs 4, 8, 21, 35-40, 49-57, 86-87, 89-90 and Portions of the Prayer for Relief Should Be Stricken as Immaterial, Impertinent, or for Lack of Ascertainability as to the Class Allegations ................................................................. 21

1.   The Court Should Strike Plaintiff's Background Allegations Regarding MHA and HBOR as Immaterial and Impertinent ........ 21

2.   The Court Should Strike Plaintiff's Class Allegations for Lack of Ascertainability ................................................................. 22

V.   CONCLUSION ................................................................. 25

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS/STRIKE**

# TABLE OF AUTHORITIES

Page(s)

CASES

*Aleem v. Bank of Am., N.A.*,
   2010 WL 532330 (C.D. Cal. Feb. 9, 2010)................................................................20

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. May 12, 2014) ..............................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................7, 8

*Barnum Timber Co. v. Envtl. Prot. Agency*,
   633 F.3d 894 (9th Cir. 2011) ...................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................3, 7

*Bell v. Cheswick Generating Station, et al.*,
   Civ. A. No. 12-929, 2015 U.S. Dist. LEXIS 9791 (W.D. Pa. Jan. 28, 2015)............9

*Bishop v. Saab Auto. A.B.*,
   1996 U.S. Dist. LEXIS 22890 (C.D. Cal. Feb. 16, 1996).......................................24

*Bottoni v. Sallie Mae, Inc.*,
   2011 U.S. Dist. LEXIS 93634 (N.D. Cal. Aug. 22, 2011).......................................22

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) .....................................................................................8

*Brush v. Wells Fargo N.A.*,
   2012911 F. Supp. 2d 445 (S.D. Tex. 2012) ...........................................................13

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .....................................................................................18, 19

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) .................................................................................7

*Colapinto v. Esquire Deposition Servs.*,
   2011 U.S. Dist. LEXIS 308141 (C.D. Cal., Mar. 8, 2011)................................23, 24

*Consumer Solutions REO, LLC v. Hillery*,
   2010 U.S. Dist. LEXIS 1437 (N.D. Cal. Jan. 8, 2010) ...........................................14

*Coyer v. HSBC Mortg. Services, Inc.*,
   701 F.3d 1104 (6th Cir. 2012) ...............................................................................14

iii

*Daimlerchrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)..................................................................................7

*DeLeon v. Wells Fargo Bank, N.A.*,
   729 F. Supp. 2d 1119 (N.D. Cal. 2010) ...............................................22

*Esso Standard Oil Co. v. Zayas*,
   352 F.Supp.2d 165 (D. Puerto Rico 2005), aff'd 445 F.3d 13 (1st Cir. 2006) .......................21

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) ...........................................................8, 9

*Faulkner v. ADT Sec. Servs., Inc.*,
   706 F.3d 1017 (9th Cir. 2013) ...........................................................7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)...........................................................................10

*Galbraith v. County of Santa Clara*,
   307 F. 3d 1119 (9th Cir. 2002) ..........................................................8

*Gonzales v. Comcast Corp.*,
   No. 10-CV-01010-LJO-BAM, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012)...........................23

*Gratz v. Bollinger*,
   539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003) ...................10

*Grill v. BAC Home Loans Servicing LP*,
   2011 U.S. Dist. LEXIS 3771 (E.D. Cal. Jan. 13, 2011)........................8, 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1990) ...........................................................8

*Herskowitz v. Apple, Inc.*,
   301 F.R.D. 460 (N.D. Cal. Aug. 7, 2014) ...........................................23

*Hoffman v. Bank of Am., N.A.*,
   2010 WL 2635773 (N.D. Cal. June 30, 2010) ....................................20

*Hollowell v. Alliance Bancorp, Inc.*,
   2011 WL 2884801 (N.D. Cal. July 19, 2011)......................................14

*Hovsepian v. Apple, Inc.*,
   2009 U.S. Dist. LEXIS 117562, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)...............9, 23

*In re Harmonic Sec. Litig.*,
   2006 U.S. Dist. LEXIS 90450 (N.D. Cal. Dec. 11, 2006)......................22

*Inc. v. High-Line Med. Instr. Co., Inc.*,
   922 F. Supp. 299 C.D. Cal. 1996 .......................................................20

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS/STRIKE

*Inman v. Suntrust Mortg., Inc.*,
    2010 WL 3516309 (E.D. Cal. Aug. 24, 2010) ........................................20

*Jackson v. Atlantic Savings of Am.*,
    2014 WL 4802879 (N.D. Cal. Sept. 26, 2014) ......................................14

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) .........................................................................18

*La Mar v. H & B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ..............................................................24

*Lapidus v. Hecht*,
    232 F.3d 679 (9th Cir. 2000) ................................................................8

*Lawther v. OneWest Bank, FSB*,
    2012 WL 298110 (N.D. Cal. Feb. 1, 2012) ..........................................18

*Lessard v. Trinity Protection Servs.*,
    2010 U.S. Dist. LEXIS 80582 (E.D. Cal. Aug. 3, 2010) ........................8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................7

*Marais v. Chase Home Finance LLC*,
    736 F.3d 711 (6th Cir. 2013) ..............................................................14

*Marks v. Ocwen Loan Servicing*,
    2008 WL 344210 (N.D.Cal.2008) ......................................................14

*Marques v. Wells Fargo Home Mortg., Inc.*,
    2010 WL 3212131 (S.D. Cal. Aug. 12, 2010) ......................................20

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988) ................................................................7

*Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*,
    852 F. Supp. 2d 925 (S.D. Ohio 2012) ..............................................21

*Mir v. Little Co. of Mary Hosp.*,
    844 F.2d 646 (9th Cir. 1988) ................................................................8

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139, 130 S. Ct. 2743, 177 L. Ed. 2d 461 (2010) ....................10

*Murray v. Sears, Roebuck and Co.*,
    2010 U.S. Dist. LEXIS 97811 (N.D. Cal. Sept. 3, 2010) ......................10

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ................................................................7

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS/STRIKE**

*O'Connor v. Boeing N. Am., Inc.*,
 184 F.R.D. 311 (C.D. Cal.1998) ...........................................................23

*O'Shea v. Littleton*,
 414 U.S. 488 (1974) ............................................................................10

*Oasis West Realty, LLC v. Goldman*,
 51 Cal. 4th 811 (2011) .......................................................................16

*Orcilla v. Bank of Am., N.A.*,
 2010 WL 5211507 (N.D. Cal. Dec. 16, 2010) ......................................20

*Reddy v. Litton Indus., Inc.*,
 912 F.2d 291 (9th Cir. 1990) ................................................................2

*Saldate v. Wilshire Credit Corp.*,
 711 F. Supp. 2d 1126 (E.D. Cal. 2010) ...............................................18

*Sandoval v. Ali*,
 34 F. Supp. 3d 1031 (N.D. Cal. 2014) ...................................................9

*Savage v. Glendale Union High Sch.*,
 343 F.3d 1036 (9th Cir. 2003) ..............................................................6

*Schreiber Distrib. Co. v. Serv Well Furniture Co.*,
 806 F.2d 1393 (9th Cir.1986) ...............................................................2

*Sherrell v. Bank of Am., N.A.*,
 2011 WL 6749765 (E.D. Cal. Dec. 22, 2011) ......................................14

*Sidney-Vinstein v. A.H. Robins Co.*,
 697 F.2d 880 (9th Cir. 1983) ................................................................8

*Smith v. Metro. Prop. & Liab. Ins. Co.*,
 629 F.2d 757 (2d Cir. 1980).................................................................21

*Smith v. State Farm Mutual Auto. Ins. Co.*,
 93 Cal. App. 4th 700 (2001) ...............................................................18

*Sprewell v. Golden States Warriors*,
 266 F.3d 979,988 (9th Cir. 2001) ........................................................12

*Stubbs v. McDonald's Corp.*,
 224 F.R.D. 668 (D. Kan. 2004)..............................................................9

*Talley v. ARINC, Inc.*,
 222 F.R.D. 260 (D. Md. 2004)...............................................................9

*Tietsworth v. Sears, Roebuck and Co.*,
 720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...........................................9, 23

*U.S. v. Ritchie*,
  342 F. 3d 903 (9th Cir. 2003) ........................................................................12

*Vazquez v. U.S. Bank Nat'l Ass'n*,
  2010 U.S. Dist. LEXIS 6920 (E.D. Cal. Jan. 28, 2010).........................11, 14

*Vida v. OneWest Bank, F.S.B.*,
  2010 WL 5148473 (D. Or. Dec. 13, 2010) ....................................................20

*Warner v. Wells Fargo Bank, N.A.*,
  2011 WL 2470923 (C.D. Cal. June 21, 2011) ...............................................20

*Williams v. Oberon Media, Inc.*,
  468 Fed. Appx. 768 (9th Cir. 2012)................................................................23

*Williams v. Yamaha Motor Corp., U.S.A.*,
  2015 U.S. Dist. LEXIS 68258 (C.D. Cal. Apr. 29, 2015) ...............................2

*Wilson v. Bank of America, N.A.*,
  48 F. Supp. 3d 787 (E.D. Pa. 2014) ...............................................................20

*Yanting Zhang v. Super. Ct.*,
  57 Cal. 4th 364 at n.9 (2013) .........................................................................18

STATUTES

15 U.S.C. § 1639(a)(2)...........................................................................................17

15 U.S.C. § 1639a..................................................................................................14

15 U.S.C. § 1640(a) ...............................................................................................14

Cal. Bus. & Prof. Code § 17200 .....................................................................17, 18

Cal. Bus. & Prof. Code § 17204 ............................................................................18

Cal. Civ. Code 2924.11.................................................................................2, 6, 12, 17

Cal. Civ. Code § 2924.11(e) ..................................................................................12

OTHER AUTHORITIES

12 C.F.R. § 1026.21 ................................................................................................19

12 C.F.R. § 1026.41(d) ..........................................................................................17

Fed. R. Civ. P. 12(b)(1)..................................................................................6, 7, 10

Fed. R. Civ. P. 12(b)(6)...........................................................................................7, 8

Fed. R. Civ. P. 12(f) ..........................................................................................8, 9, 22

vii

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS/STRIKE**

Fed. R. Civ. P. 23 .................................................................................................................9

Fed. R. Civ. P. 23(a) .......................................................................................................9, 10

Fed. R. Civ. P. 23(b) .......................................................................................................9, 10

Fed. R. Civ. P. 23(d)(1)(D) .................................................................................................9

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS/STRIKE**

# I.    INTRODUCTION

After plaintiff Un Boon Kim ("Plaintiff") defaulted on her home loan, defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), on behalf of Plaintiff's lender,[1] provided her a loan modification to save her home from foreclosure.  Plaintiff has returned the favor by suing Shellpoint for allegedly charging her, and a putative class of California borrowers, an improper and unlawful fee associated with their modified mortgages and providing them with inaccurate and incomplete monthly periodic mortgage statements.  The charge, however, is expressly authorized by Plaintiff's loan documents.  Further, the charge was accurately and completely reflected in the monthly statements Plaintiff received from Shellpoint, and which she has attached to her First Amended Complaint ("FAC").  On the basis of those allegations, Plaintiff asserts claims for: (1) violations of the federal Truth in Lending Act ("TILA") and guidelines of the federal Make Homes Affordable program ("HAMP Guidelines"); (2) violations of California Homeowners' Bill of Rights ("HOBR"); (3) breach of contract; (4) violations of California's Unfair Competition Law ("UCL"); and (5) declaratory relief.  However, Plaintiff's entire FAC is subject to dismissal as she lacks standing to bring her claims, fails to allege any legally cognizable causes of action and has further created a sham pleading by deleting and removing references to the controlling agreements that would otherwise end her claims on amendment.

*First*, Plaintiff does not allege an injury sufficient to establish Article III standing under TILA, UCL, HOBR, or for her breach of contract and declaratory relief claims.  Given her lack of standing to assert these claims individually, Plaintiff certainly cannot bring those claims on behalf of any putative class or the three subclasses asserted in the FAC.  As a result, the Court lacks jurisdiction to hear each of Plaintiff's claims.

*Second,* the loan documents that serve as a basis for Plaintiff's claims prohibit

---

[1] Plaintiff's lender is Bank of New York Mellon fka the Bank of New York as Trustee for the Certificateholders of the CHL Mortgage Pass-Through Trust 2004-14, Mortgage Pass Through Certificates, Series 2004-14.

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS/STRIKE**
143262.00634/100459300V.5

Plaintiff from bringing a lawsuit against Shellpoint, either as an individual litigant or as part of a class, prior to giving Shellpoint written notice and a reasonable opportunity to cure any breach of the deed of trust or any action taken pursuant to the deed of trust. As Plaintiff has admitted she failed to give such notice, each of Plaintiff's claims fail.

_Third_, Plaintiff asserts a private right of action for violations of TILA and HAMP Guidelines.  However, neither provides a private right of action against mortgage servicers such as Shellpoint.  Therefore, Plaintiff's TILA claim fails as a matter of law.  To the extent Plaintiff's UCL claim is based on Shellpoint's alleged violations of TILA or HAMP, Plaintiff's UCL claim likewise fails.

_Fourth_, Plaintiff asserts that a fee related to an earlier _foreclosure_ proceeding can also be deemed related to her later loan modification, and that such a fee violates her loan modification agreement as well as state and federal laws.  Based on those allegations, Plaintiff brings claims for violation of HOBR (Civ. Code § 2924.11), breach of contract, and violation of UCL.  But the loan documents attached to Plaintiff's original complaint ("Complaint") show that Shellpoint was entitled to charge that fee.[2]  While Plaintiff is attempting avoid the terms of those loan documents by eliminating them from the amended complaint, she cannot avoid the exhibits that were already incorporated by reference in the Complaint without making the FAC a sham pleading.  Because Shellpoint did not charge any improper fee, as evidenced by Plaintiff's own pleadings and admissions that cannot now be avoided, the HOBR, breach of contract and UCL claims also fail.

---

[2] Notably, Plaintiff saw fit to remove the loan documents as exhibits from the FAC as Shellpoint's Motion to Dismiss and Strike Portions of the Complaint identified the specific provisions that allow Shellpoint to charge the fees at issue. (_See_ Req. for Judicial Not. ("RJN"), Ex. A). Instead of opposing Shellpoint's Motion to Dismiss the Complaint, Plaintiff voluntarily amended her Complaint and deleted all references to the note and deed of trust, before filing the FAC. However, Plaintiff may not avoid the admissions made in her prior pleading without creating a sham pleading in the FAC. _Williams v. Yamaha Motor Corp., U.S.A._, 2015 U.S. Dist. LEXIS 68258 (C.D. Cal. Apr. 29, 2015) (dismissing with prejudice an amended complaint containing allegations contradicting those made by plaintiff in prior complaint); _Reddy v. Litton Indus., Inc._, 912 F.2d 291, 296 (9th Cir. 1990) (indicating denial of leave to amend was permissible because amendment's futility and rule that amended complaint can only allege "other facts consistent with the challenged pleading") (_quoting Schreiber Distrib. Co. v. Serv Well Furniture Co.,_ 806 F.2d 1393, 1401 (9th Cir.1986)).

For these reasons, Shellpoint respectfully requests this Court dismiss Plaintiff's entire FAC with prejudice.  Furthermore, these defects, sufficient on their face to warrant dismissal, require even more scrutiny in the context of a purported class action, where pleading deficiencies should "be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1966 (2007).  Therefore, Shellpoint moves, in the alternative, to strike the class allegations set forth in the FAC for lack of ascertainability.  Variances in individual facts overwhelm common issues, and the class representative is not typical of the proposed state-wide class or any of the subclasses because Plaintiff was never charged late fees or sent inaccurate billing statements.  For these reasons, Shellpoint respectfully requests that the Court strike the class allegations identified in the concurrently filed Notice of Motion.

## II.    STATEMENT OF FACTS

### A.    Plaintiff Executes the Deed of Trust

On or around March 17, 2004, Plaintiff and her late husband took out a mortgage for approximately $400,000 (the "Loan").  (FAC ¶¶ 10-11.)  In connection with that Loan, Plaintiff executed a note ("Note") and deed of trust ("Deed of Trust") in favor of third-party Moneyline Lending Services, Inc.  (*Id.*)  Plaintiff's obligations under the Loan were secured by the Deed of Trust on the real property located at 4642 Mount La Platta Drive, San Diego, California (the "Property").  (*See id.* at ¶¶ 10-11, RJN, Exs. B-C.)  The Note provides that "the Note Holder will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees."  (RJN, Ex. B at ¶ 7(E).)  The Deed of Trust provides that Plaintiff may be charged "for services performed in connection with [her] default, for the purpose of protecting Lender's interest in the Property and rights under th[e] Security Instrument, including, but not limited to, attorneys' fees."  (*Id.*, Ex. C at ¶ 14.)

### B.    Plaintiff's Default and Subsequent Foreclosure Proceeding

In or around March 2010, Plaintiff defaulted on the Loan, owing $22,000 in overdue payments.  (*See* RJN Ex. D.)  Plaintiff's servicer at that time initiated foreclosure proceedings by recording a Notice of Default with the San Diego County Recorder's Office.  (*See id.*)

Beginning in or around February 2014, while Plaintiff's Loan was still in default, Shellpoint began servicing the loan.  (*See* FAC ¶ 13; RJN ¶ 9; Decl. of Olivia Miller ("Miller Decl.") ¶ 4, Ex. I.)  Shellpoint is not, and has never been, the lender on Plaintiff's Loan.  (*See* Miller Decl. ¶ 3.  *See also* RJN Exs. E-G, I; FAC, Ex. 2.)

## C.  Plaintiff Is Approved for a Loan Modification in August 2014

On or about August 22, 2014, Plaintiff was approved for a loan modification. (*See* FAC ¶ 14.)  On or around August 29, 2014, Plaintiff executed a loan modification agreement ("LMA") with Shellpoint.  (*Id.* at ¶ 15.)  The LMA provides "[t]hat all terms and provisions of the Loan Documents [*i.e.*, Deed of Trust and Note], except as expressly modified by this Agreement, remain in full force and effect," and that the Loan Documents as modified by the LMA are "duly, valid binding agreements."  (*Id.*, Ex. 1 at §§ 4(E)-(F).)  In signing the LMA, Plaintiff expressly agreed to comply with all of the agreements and requirements of the Loan Documents.  (*Id.*, Ex. 1 at § 4(C).)

Under the LMA, "[t]he modified principal balance of [the] Note" became $447,086.20, which includes "all amounts and arrearages that will be past due as of the Modification Effective Date . . . ." (*Id.*, Ex. 1 at § 3(B).)  The LMA sets forth a payment schedule for the step-rate loan, which included total monthly payments of $1,840.65 and 2% interest rate for the first five years.  (*Id.*, Ex. 1 at § 3(C).)  The LMA payment schedule also sets forth the date and amount of each subsequent interest rate change for the life of the Loan.  (*Id.*, Ex. 1 at § 3(C).)  The mortgage statements attached to the FAC show regular monthly mortgage payments of no more than $1840.65 and the applicable interest rate of 2%.  (*See id.* at Exs. 3-7.)

## D.  The Trustee Assess

After receiving the executed LMA, Shellpoint contacted the foreclosure trustee

that had been retained in connection with the March 2010 foreclosure proceeding; Shellpoint requested the trustee duly record a Notice of Rescission rescinding the earlier Notice of Default.  (*See* RJN ¶ 10, Ex. H; Miller Decl. ¶ 5, Ex. J.)  The foreclosure trustee did so.  (*See* RJN, Ex. H.)  In or around November 2014, the foreclosure trustee assessed Shellpoint $250 for those services.  (*See* RJN ¶ 10; Miller Decl. ¶ 5, Ex. J.)

Plaintiff's December 2014 monthly mortgage statement reflects the $250 "Trustee Assess" (referred to in the FAC as the "Foreclosure Fee") as due and owing. (FAC ¶ 20, Ex. 3.)  Plaintiff contacted Shellpoint on December 2, 2014 to obtain an explanation for the assess.  (*Id.* at ¶ 22.)  The Shellpoint representative correctly advised Plaintiff that the Trustee Assess arose from legal fees incurred at the initiation of the earlier foreclosure proceedings, as is permitted by the terms of the Deed of Trust and Note.  (*See id.* at ¶ 22.)

### E.    Procedural History and Plaintiff's First Amended Complaint

On March 17, 2015, Plaintiff, on behalf of herself and all others similarly situated, filed suit against Shellpoint for alleged violations of TILA, violations of the HOBR, breach of contract, violations of the UCL and seeking declaratory relief.  (*See generally* Compl. [Dkt. No. 1].)  In that Complaint, Plaintiff attached as exhibits the Note and Deed of Trust that served as the basis of her claims, and cited the terms and provisions of both documents extensively.   (*Id.*) Plaintiff identified a subclass of the putative class as borrowers in California who were charged "late fees in violation of their Promissory Note and/or their DOT."  (*Id.* at ¶ 40.)  Shellpoint responded by moving to dismiss, or in the alternative, strike portions of the complaint on several grounds, including lack of standing and the fact that the Note and Deed of Trust expressly permitted the fees charged by Shellpoint.  (*See* Dkt. No. 13.)  On May 22, 2015, instead of opposing Shellpoint's motion to dismiss and strike, Plaintiff filed the FAC, asserting a proposed state-wide class of all persons who have a residential mortgage loan agreement relating to real property located within California which is

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS/STRIKE**

owned and/or serviced by Shellpoint, and sets forth three subclasses, defined as

persons who, after January 1, 2013:

> **Subclass 1**: received monthly billing statements from
> Shellpoint that did not state that the interest rate and monthly payment
> would change, or the amount of any late fee should the regular payment
> due not be paid by a date specified;
>
> **Subclass 2**: were billed for regular monthly payments in excess of the
> regular monthly payments specified in the borrower's loan modification
> agreements; and
>
> **Subclass 3**: applied for and received a first lien loan modification and
> who were charged fees after the application was submitted in violation of
> California Civil Code §2924.11, HAMP Guideline 3.1.1 and HAMP
> Guideline 9.3.3.

(FAC at ¶ 50.)  Notably, Plaintiff omitted the Note and Deed of Trust from the exhibits

to the FAC and discarded all references to those loan documents in the text of her

pleading.  (RJN, Ex. A.)  Despite never having been charged an improper fee, as the

loan documents expressly permit the fees at issue, Plaintiff purports to represent a

state-wide class containing "thousands of members" who allegedly suffered over

$5,000,000 in damages.  (*Id.* ¶¶ 4, 52.)  Nowhere in the FAC, however, does Plaintiff

allege that Shellpoint has a pattern or practice of improperly charging Trustee Assess

fees, which could potentially suggest any alleged harm to any customers other than

Plaintiff.  (*See generally id.*)  Further, despite having no private right of action against

Shellpoint for alleged violations of TILA, Plaintiff attempts to represent a class of

purported members on their TILA claim(s).

## III.   STANDARD OF REVIEW

### A.   Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal

Rule of Civil Procedure 12(b)(1) will be granted if the complaint on its face fails to

allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale*

*Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS/STRIKE**

12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  Federal courts have subject matter jurisdiction only over "cases" or "controversies" under Article III of the U.S. Constitution.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).

To invoke that jurisdiction, a plaintiff must allege "standing for each claim he seeks to press" or face dismissal under Rule 12(b)(1). *Daimlerchrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction, *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010), by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached, *Lujan*, 504 U.S. at 561; *see also Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011) (at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met).

### B.     Rule 12(b)(6)

Courts are required to dismiss a complaint when the allegations of the complaint fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Though the court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs, *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013), it should not accept mere "labels and conclusions," nor a "formulaic recitation of the elements of a cause of

action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

In addition to a plaintiff's allegations, the court may consider exhibits submitted with the complaint, documents referenced in the complaint and relevant matters subject to judicial notice. *See*, *e.g.*, *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). Furthermore, if a plaintiff fails to attach to the complaint documents upon which the complaint is based, the defendant may attach such documents to a Rule 12(b)(6) motion to show that they do not support the plaintiff's claim. *Lessard v. Trinity Protection Servs.*, 2010 U.S. Dist. LEXIS 80582 (E.D. Cal. Aug. 3, 2010) (*citing Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (*overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F. 3d 1119, 1127 (9th Cir. 2002)); *see also Grill v. BAC Home Loans Servicing LP*, 2011 U.S. Dist. LEXIS 3771 (E.D. Cal. Jan. 13, 2011) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

## C.    Rule 12(f)

Alternatively, a Federal Rule of Civil Procedure 12(f) motion to strike may be proper where the class allegations are not ascertainable.  As the Ninth Circuit Court of Appeals explained in *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993):

> "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.... *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  "Immaterial" matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990).  "Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question."

1  *Id.* at 1527 (citations and internal quotations omitted), *rev'd on other grounds by*

2  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35, 114 S.Ct. 1023, 1033 (1994).  Striking

3  overbroad class allegation at the pleading stage will streamline discovery and focus

4  the proof to be had on the claims against a defendant.  *See id.*, 984 F.2d at 1528.

5  **D.  Rule 23(d)(1)(D)**

6  Moreover, numerous courts have endorsed motions to strike as a means of

7  testing the viability of class allegations.  *See, e.g.*, *Sandoval v. Ali*, 34 F. Supp. 3d

8  1031, 1043 (N.D. Cal. 2014) (striking class allegations at pleading stage); *Hovsepian*

9  *v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 117562, 2009 WL 5069144, at * 2 (N.D. Cal.

10  Dec. 17, 2009) (where it is apparent from the pleadings that a class cannot be

11  maintained, districts courts may strike class allegations prior to discovery); *Bell v.*

12  *Cheswick Generating Station, et al.*, Civ. A. No. 12-929, 2015 U.S. Dist. LEXIS 9791

13  (W.D. Pa. Jan. 28, 2015) (Class allegations may be stricken only when no amount of

14  discovery will demonstrate that the class can be maintained); *see also Stubbs v.*

15  *McDonald's Corp.*, 224 F.R.D. 668, 675-76 (D. Kan. 2004) (granting defendant's

16  motion to strike class allegations where plaintiff failed to meet the prerequisites of

17  Rule 23(a)); *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 271 (D. Md. 2004) (granting

18  defendant's motion to strike plaintiffs' pay and promotions class allegations where

19  plaintiffs failed to meet the requirements of Rule 23(a) and Rule 23(b)).  Federal Rule

20  of Civil Procedure 23(d)(1)(D) gives the Court discretion to dismiss and/or strike class

21  allegations and requires that pleadings "be amended to eliminate therefrom allegations

22  as to representation of absent persons . . . ."  It was designed so that courts can give

23  "clear definition" to a class action, and so that they can "determine as early in the

24  proceedings as practicable" whether class allegations can be maintained.  Fed. R. Civ.

25  P. 23, Advisory Committee Notes, 1966 Amendment, Subd. (d)(4) and (c)(1).

26  Under Rules 23(d)(1)(D) and 12(f), the Court "has authority to strike class

27  allegations prior to discovery if the complaint demonstrates that a class action cannot

28  be maintained."  *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1146

(N.D. Cal. 2010); *see also Murray v. Sears, Roebuck and Co.*, 2010 U.S. Dist. LEXIS 97811, at *5 (N.D. Cal. Sept. 3, 2010) (same). For a class action to be maintained, the class must be ascertainable, all of the requirements of Rule 23(a) must be satisfied, and one of the requirements of Rule 23(b) must be satisfied. *Id.*

## IV.   ARGUMENT

### A.   Plaintiff Lacks Article III Standing to Bring the TILA, UCL, HOBR, Breach of Contract or Declaratory Relief Claims

Plaintiff fails to allege a cognizable injury to satisfy the standing requirements of Article III, and thus each of her claims should be dismissed under Rule 12(b)(1). To establish Article III standing, a plaintiff "must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 130 S. Ct. 2743, 2752, 177 L. Ed. 2d 461 (2010).

In a class action, named plaintiffs representing a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Gratz v. Bollinger*, 539 U.S. 244, 289, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003) (internal quotation marks and citations omitted). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Here, Plaintiff has failed to allege an injury under TILA, UCL, HOBR or for breach of contract or declaratory relief which would provide her standing in her individual capacity or to represent the putative class or subclasses.

#### 1.   Plaintiff's Billing Statements Confirm She Has No Standing Under TILA or Subclass 1

Plaintiff asserts that Shellpoint's monthly periodic statements violated TILA by failing to: (1) specify the amount to be charged as a late fee should Plaintiff make her regular monthly payment after the applicable period of time; and (2) specify the day after which Plaintiff's interest rate may next change.  (FAC ¶ 65.)  Importantly, and as argued in more detail in Section IV.C below, Plaintiff has no private right of action under TILA against Shellpoint, who is only Plaintiff's servicer.  *Vazquez v. U.S. Bank Nat'l Ass'n,* 2010 U.S. Dist. LEXIS 6920, 6-7 (E.D. Cal. Jan. 28, 2010) ("TILA establishes a private right of action and provides for statutory damages for violations of TILA only against the creditor (the owner of the obligation) and assignees… [S]ection 1640(a) precludes an action against a servicer").  Therefore, she has no possible claim to an injury.[3]  As Plaintiff has no standing under TILA either individually or on behalf of subclass 1, the claim must be dismissed with prejudice.

### 2.    Plaintiff Has No Standing Under Her HOBR, UCL, Breach of Contract or Declaratory Relief Claims and She Cannot, Therefore, Represent Subclass 2 or 3

Plaintiff further alleges that a "Foreclosure Fee" charged to her account was in violation of HOBR and UCL, as well as her LMA, and asserts two subclasses on that basis:  Subclass 2 consisting of persons who "were billed for regular monthly payments in excess of the regular monthly payments specified in the borrower's loan modification agreements" and Subclass 3 consisting of persons who "applied and received a first lien loan modification and who were charged fees after the application was submitted in violation of" HOBR and HAMP.  (*See* FAC ¶ 50.)  However, as further described below, and as demonstrated from Plaintiff's own billing statements incorporated as exhibits to the FAC, Plaintiff was never charged any improper fee or

---

[3] Even if Plaintiff could pursue a private TILA claim against Shellpoint, the servicer on Plaintiff's mortgage, the TILA claim remains defective.  *First*, TILA requires the disclosure of "[t]he amount of any late payment."  Here, no monthly statement affirmatively states that a late fee of unspecified amount would be assessed.  And in fact, none would have been.  (*See* FAC, Exs. 3-6 [stating only that a late fee (in some instances, of $0) *may* be assessed].  *Cf.* Ex. 7 [stating that a late fee of $69.42 *will* be charged].)  *Second*, TILA requires disclosure only of "[t]he date after which the interest rate *may* next change" (emphasis added).  By its terms, the disclosure does not apply to fixed rate and step-rate mortgages, as the interest rates charged in those mortgages are fixed at the time consumers enter into the transaction.

11

1    excessive regular monthly payment.

2        First, the monthly mortgage payments attached to the FAC show that the

3    regular monthly statements are no greater than specified in the LMA.  The LMA

4    provides that Plaintiff's regular monthly payment will be approximately $1,840.65.

5    Each statement shows Plaintiff owed a regular monthly payment owed of no more

6    than $1,840.65.  (*See* FAC, Exs. 3-7.)

7        Second, neither HOBR nor HAMP Guidelines proscribe the Trustee Assess.

8    The HOBR proscribes charging "any application, processing, or other fee for a first

9    lien loan modification or other foreclosure prevention alternative" (hereinafter, an

10   "administrative HAMP fee").  Cal. Civ. Code § 2924.11(e).  Shellpoint never charged

11   Plaintiff any such administrative HAMP fee.  While Plaintiff contends the Trustee

12   Assess amounts to an "other fee" in connection with a loan modification, in violation

13   of the HOBR (FAC ¶ 70), Plaintiff also admits she was informed that the Trustee

14   Assess stemmed from legal fees related to an earlier *foreclosure* proceeding, not

15   Plaintiff's subsequent loan modification.  (*See* FAC ¶ 15; RJN Ex. ¶¶ 8, 10, Ex. H;

16   Miller Decl. ¶ 5, Ex. J.)  Thus, the Trustee Assess does not run afoul of the HOBR,

17   which has no prohibition against charging fees related to foreclosure proceedings.  *See*

18   Cal. Civ. Code § 2924.11.  Moreover, the Deed of Trust and Note[4] expressly permit

19   Shellpoint to charge the Trustee Assess (RJN, Exs. B at § 7(E) and C at § 14), and no

20   provision in the LMA modifies or revokes that permission (*see generally* FAC, Ex. 1).

21       Accordingly, not only was Shellpoint properly following the provisions of the

22   HOBR, Shellpoint was specifically permitted to take such action under the agreements

23   that govern the relationship between Shellpoint and Plaintiff.

24       As a result, Plaintiff cannot demonstrate an actual injury under HOBR, UCL or

25   for breach of contract or declaratory relief sufficient to have standing for such claims

---

26   [4] Again, Plaintiff cannot avoid the terms of the controlling loan documents, even if she
27   conveniently omits them on amendment in the FAC.  The Court may disregard
     allegations in a complaint if contradicted by facts established by reference to
28   documents attached as exhibits to the complaint.  *Sprewell v. Golden States Warriors*,
     266 F.3d 979,988 (9th Cir. 2001); *Grill v. BAC Home Loans Servicing LP*, 2011 U.S.
     Dist. LEXIS 3771 (2011) (*citing U.S. v. Ritchie*, 342 F. 3d 903, 908 (9th Cir. 2003)).

or serve as the class representative under Subclass 2 or 3.  For these reasons alone, Plaintiff's FAC should be dismissed without leave to amend.

> **B.    Each of Plaintiff's Claims Fail Because She Has Not Provided Shellpoint with the Required Written Notice and Cure Period Prior to Filing Her Action**

The Deed of Trust, which governs in part the relationship between Plaintiff and Shellpoint, provides:

> [n]either Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(*See* RJN, Ex. C at § 15.)  Section 15 of the Deed of Trust specifies that "[a]ll notices given by the Borrower or Lender in connection with this Security Instrument must be writing….  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower."  (*Id.*)  When Shellpoint took over servicing in 2014, it designated another address for such notices; the Notice of Transfer of Servicing provided an address for all written inquiries.  (Miller Decl. ¶ 4, Ex. I.)

The LMA, upon which Plaintiff bases her entire FAC, modifies certain other provisions of the Deed of Trust, but reaffirms the notice and cure provisions of the Deed of Trust.  (*Id.* at Ex. 3, § 4(E).)  *See Brush v. Wells Fargo N.A.*, 2012911 F. Supp. 2d 445, 468 (S.D. Tex. 2012) (finding the HAMP's adopting the rights and remedies of the underlying deed of trust included the notice and cure provision). In the FAC, Plaintiff alleges a number of purported breaches of the LMA or actions taken by Shellpoint pursuant to the Deed of Trust which allegedly violate state and federal laws.  However, nowhere in the FAC does Plaintiff allege that she gave written notice to Shellpoint of these breaches or violations.  In fact, Plaintiff admits she did

1  not provide Shellpoint any notice or opportunity to cure, but attempts to avoid the

2  elimination of her claims by omitting the Deed of Trust as an exhibit on amendment.

3  (FAC ¶ 12.)  But Plaintiff cannot hide from what she has already admitted in her

4  Complaint—each of her allegations arise from actions Shellpoint took pursuant to the

5  Deed of Trust, and, therefore, each of her claims are subject to dismissal without leave

6  to amend for her failure to provide notice and opportunity to cure.  *See Jackson v.*

7  *Atlantic Savings of Am.*, 2014 WL 4802879, at *6 (N.D. Cal. Sept. 26, 2014)

8  (dismissing claim to set aside the deed of trust, due to plaintiff's failure to allege

9  compliance with the notice-and-cure provision as it pertained to her action); *Hollowell*

10  *v. Alliance Bancorp, Inc.*, 2011 WL 2884801 (N.D. Cal. July 19, 2011) (same).

11  **C.  Plaintiff's TILA Claim (Count I) Should Be Dismissed, as TILA**
**Provides No Private Right of Action Against Mortgage Servicers**
12  **Such as Shellpoint**

13  As mentioned above, even if Plaintiff could overcome her lack of standing,

14  Plaintiff cannot maintain a TILA claim against Shellpoint because she has no private

15  right of action under TILA.  TILA provides civil liability only against "any <u>creditor</u>

16  who fails to comply with any requirement imposed under [the statute]."  15 U.S.C. §

17  1640(a) (emphasis added).  While TILA imposes certain obligations on mortgage

18  servicers such as Shellpoint (*see*, *e.g.*, 15 U.S.C. § 1639a), the statute does not provide

19  any civil liability for those servicers.  *See Marais v. Chase Home Finance LLC*, 736

20  F.3d 711, 718-19 (6th Cir. 2013) (affirming lower court's dismissal of the TILA claim

21  because "Chase was a servicer of the loan and TILA expressly exempts servicers from

22  liability unless the servicer was also a creditor or a creditor's assignee").[5]

23  ---

[5] *See also Sherrell v. Bank of Am., N.A.*, 2011 WL 6749765, at *12 (E.D. Cal. Dec. 22,
24  2011) ("[s]ervicers of consumer obligations are not to be treated as assignees for
purposes of imposing liability unless they are also the owner of the obligation"); *Marks*
25  *v. Ocwen Loan Servicing*, 2008 WL 344210, at *2 (N.D.Cal.2008) ("loan servicers are
not liable under TILA as assignees unless the loan servicer owned the loan obligation
26  at some point").  *See also Coyer v. HSBC Mortg. Services, Inc.*, 701 F.3d 1104, 1109
(6th Cir. 2012) (holding that plaintiffs failed to state a TILA claim against their
27  mortgage servicer for alleged misrepresentation and fraud at the time they entered the
transaction because the servicer was not a party to that transaction and instead bought
28  the mortgage on the secondary market); *Vazquez v. U.S. Bank Nat'l Ass'n*, 2010 U.S.
Dist. LEXIS 6920, at *6-7 (E.D. Cal. Jan. 28, 2010); *Consumer Solutions REO, LLC v.*
*Hillery,* 2010 U.S. Dist. LEXIS 1437 (N.D. Cal. Jan. 8, 2010).

In this case, Shellpoint is not Plaintiff's creditor; only her mortgage servicer. (*See* FAC, Ex. 2; RJN, Exs. E-G, I; Miller Decl. ¶3.)  Thus, Plaintiff has no private right of action against Shellpoint, and Plaintiff cannot state a claim under TILA.

### D. Plaintiff's HOBR Claim (Count II) Should Be Dismissed Because the Trustee Assess Cannot Be Considered an Administrative HAMP Fee

Plaintiff contends the Trustee Assess amounts to an "other fee" in connection with a loan modification, in violation of the HOBR.  (FAC ¶ 70.)  Plaintiff's own pleadings, however, belie that contention.

Plaintiff admits Shellpoint had advised her that the Trustee Assess stemmed from legal fees related to an earlier foreclosure proceeding.  (*See* FAC ¶ 22.)  In fact, that earlier foreclosure proceeding was initiated in March 2010 (RJN, Ex. D), more than three years before Plaintiff ever requested consideration for a loan modification (FAC ¶ 14 [Plaintiff first inquired about loan modification "in or about June 2013"]).  After Plaintiff and Shellpoint executed the LMA, Shellpoint incurred fees to resolve the foreclosure proceeding—namely, to file a notice rescinding the then-pending Notice of Default.  (Miller Decl. ¶ 5.)  The fact that the Trustee Assess was incurred by Shellpoint after the loan modification does not change the nature of the fee or Shellpoint's ability to charge the fee.  As discussed above, Plaintiffs' Deed of Trust and Note expressly permit Shellpoint to recover fees incurred for foreclosure.  (*See* RJN, Ex. B at § 7(E).  *See also* Ex. C at § 14.)  The Trustee Assess related to the foreclosure proceeding, and was a direct result of Plaintiff's earlier default.  It cannot be considered an administrative HAMP fee.  As such, Shellpoint's conduct in charging the fee does not run afoul of the HOBR.

### E. Plaintiff's Breach of Contract Claim (Count III) Should Be Dismissed Because Shellpoint Did Not Breach any Term of the LMA in Charging the Trustee Assess

Plaintiff's contract claim fails because she cannot allege facts showing any breach by Shellpoint.  To state a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to the plaintiff.  *See*

1  *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

2          As an initial matter, the loan documents expressly permit Shellpoint to charge

3  Plaintiff the Trustee Assess.  In particular, Shellpoint may recover "for services

4  performed in connection with [her] default, for the purpose of protecting Lender's

5  interest in the Property and rights under th[e] Security Instrument, including, but not

6  limited to, attorneys' fees."  (RJN, Ex. B at § 7(E).  *See also* Ex. C at § 14.)  The LMA

7  reaffirms that "all terms and provisions of the Loan Documents, except as expressly

8  modified by [the LMA], remain in full force and effect; nothing in [the LMA] shall be

9  understood or construed to be a satisfaction or release in whole or in part of the

10  obligations contained in the Loan Documents."  (FAC, Ex. 1 at § 4(F).)

11          Still, Plaintiff asserts that Shellpoint breached the LMA by: (1) charging a

12  Trustee Assess as a separate fee, rather than capitalize that fee into the modified

13  principal balance of the LMA; and (2) seeking to recover an "illegal" Trustee Assess in

14  the first place, allegedly in violation of the HOBR and UCL.  (*Id.* ¶¶ 77, 83(d), 83(e).)

15          Plaintiff contends the LMA required that the Trustee Assess be capitalized into

16  the modified principal balance (*id.* ¶ 76), but the LMA requires no such thing.  The

17  LMA provides only that "[t]he modified principal balance . . . include all amounts and

18  arrearages that will be ***past due*** as of the Modification Effective Date" (emphasis

19  added).  (*See id.*, Ex. 1 at § 3(B).)  The Trustee Assess was not past due at the time of

20  the LMA; in fact, Shellpoint did not incur the charge until November 2014, months

21  after the LMA was executed.  (*See id.* at ¶ 22.)

22          To the extent Plaintiff argues that the Trustee Assess also violates the LMA

23  because it "causes" Plaintiff's monthly payment to be "in excess" of the regular

24  monthly amount due under the LMA, that argument is contradicted by the LMA itself.

25  The LMA's terms authorize, and indeed—contemplate—that Plaintiff will pay fees and

26  charges in addition to the regular monthly payment.  (*See, e.g.*, FAC, Ex. 1 at § 4(C)

27  [providing that in addition to the scheduled payments, Plaintiff expressly agrees to

28  make all payments of taxes, insurance premiums, assessments, Escrow Items,

impounds, and all other payments]; § 4(F) [affirming all terms and conditions of the loan documents not modified by the LMA remain in full effect]; RJN Ex. C at § 6 [permitting loan charges], § 7(A) [permitting late charges].)  In fact, each monthly statement attached to the FAC includes a line item for "Total Fees and Charges" in addition to the "Regular Monthly Payment."  (*Id.*, Exs. 3-7.)  Therefore, Plaintiff's contract claim fails to the extent it is based on any alleged failure to capitalize the Trustee Assess.

Lastly, Plaintiff cannot show that Shellpoint's charging an allegedly "illegal" Trustee Assess breaches any term of the LMA.  (*See generally* FAC, Ex. 3; FAC  74-80.)  No provision of the LMA addresses such "illegal" fees.  (*See generally* FAC, Ex. 1.)  Even if the LMA did prohibit the charging of any "illegal" fees, the Trustee Assess in this case was perfectly legal; it violates no provision of the HOBR or the UCL.  The loan documents attached to Plaintiff's Complaint and FAC show that Plaintiff's Deed of Trust expressly permits the charging of a Trustee Assess.  Plaintiff does not specify how a Trustee Assess *which Plaintiff was obligated to pay after defaulting on her Loan* could violate the HOBR or the UCL.  None of the statutes addresses—let alone prohibits—the charging of a Trustee Assess related to a prior foreclosure proceeding.  *See generally* Cal. Civ. Code 2924.11 [regarding foreclosure prevention alternatives], Cal. Bus. & Prof. Code § 17200, 15 U.S.C. § 1639(a)(2) [regarding disclosure of interest rate], 12 C.F.R. § 1026.41(d) [regarding content and layout of monthly mortgage statements].  Therefore, Plaintiff's contract claim also fails to the extent it is based on an allegedly "unlawful" Trustee Assess.

Accordingly, Plaintiff fails to allege any facts establishing a breach of contract by Shellpoint.  In fact, the LMA and loan documents show Plaintiff *cannot* allege facts sufficient to establish any breach.  Therefore, Plaintiff's breach of contract claim must be dismissed with prejudice.

**F.    Plaintiff's UCL Claim (Count IV) Should Be Dismissed, as Shellpoint's Actions Were Lawful Exercises of Shellpoint's Contractual Right to Pursue Foreclosure upon Default**

The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To state a claim for an "unlawful" business practice under California's Unfair Competition Law, a plaintiff must assert the violation of another law. Where a plaintiff cannot state a claim under the "borrowed" law, he cannot state a UCL claim either. *See*, *e.g.*, *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1138 (E.D. Cal. 2010) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) and *Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001)). To assert a claim under the "unfair" prong of UCL, a plaintiff must assert either a public policy tethered to specific constitutional, statutory or regulatory provision, a practice that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, or a consumer injury that is neither outweighed by countervailing benefits nor avoidable by consumers. *See Yanting Zhang v. Super. Ct.*, 57 Cal. 4th 364, 380 at n.9 (2013).

A claim may be brought under the UCL "by a person who has suffered injury in fact and has lost money or property as a result of unfair competition." Cal. Bus. & Prof. Code § 17204. Therefore, to have standing under the UCL a plaintiff must: "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim." *Lawther v. OneWest Bank, FSB*, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011)). An absence of facts describing the money or property allegedly lost is fatal to a plaintiff's UCL claim. *Saldate*, 711 F. Supp. 2d at 1137.

### 1. Plaintiff Has Not Properly Stated a UCL Claim Under Either the Unlawful or Unfair Prongs of UCL

Here, Plaintiff asserts a claim under the unlawful and unfair prongs of the UCL and alleges the following were unfair and deceptive business practices: (1) charging an

administrative HAMP fee, in violation of the HOBR and HAMP Guidelines; (2) charging the administrative HAMP fees in breach of the LMA; (3) violating TILA by failing to disclose certain information on the monthly mortgage statement; and (4) violating HAMP Guidelines by referring the Loan to foreclosure before determining Plaintiff to be ineligible for HAMP.  (*See* FAC ¶ 83.)

As discussed above, Shellpoint did not charge any administrative HAMP fee, only a Trustee Assess related to an earlier foreclosure proceeding.  Accordingly, Plaintiff cannot maintain her UCL claim on the first two alleged grounds.  Moreover, Plaintiff has not lost any money or property as a result of the alleged unfair competition.  All of her payments were applied to either the authorized Trustee Assess itself or applied toward her outstanding principal balance pursuant to the loan documents.[6]  (*See* RJN Ex. C at § 2 [setting forward priority of payments and providing overpayments "shall be applied . . . to reduce the principal balance of the Note"].)  Shellpoint has not been unjustly enriched in any way. As such, Plaintiff has not and cannot allege an unfair business practice, or any resulting loss of money sufficient to establish any injury.

**2.** **Plaintiff's UCL Claim Based on Alleged Violations of TILA and HAMP Guidelines Should Be Dismissed as a Backdoor Effort to Enforce Compliance with Regulations that Provide Plaintiff No Private Right of Action**

To the extent Plaintiff bases her UCL claim on alleged violations of TILA or HAMP Guidelines, the Court should not entertain these claims.  "Although the unfair competition law's scope is sweeping, it is not unlimited."  *Cel-Tech*, 20 Cal. 4th at 182. In particular, the California Supreme Court held that "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair. . . .  If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie,

---

[6] The California Supreme Court in *Cel-Tech* held specifically that where the legislature has permitted certain conduct under a safe harbor, plaintiffs may not use the general unfair competition law to assault that harbor.  *See Cel-Tech*, 20 Cal.4th at 182.  Here, Regulation Z provides a safe harbor by expressly permitting the application of credit balances back to the borrower. (*See* 12 CFR § 1026.21.)  Shellpoint's crediting amounts to Plaintiff's principal complies with that regulation.  As a result, Plaintiff cannot base her UCL claim on such alleged conduct by Shellpoint.

courts may not override that determination." *Id.* at 183.

In this case, neither TILA nor HAMP Guidelines provide a private right of action against mortgage servicers such as Shellpoint. As outlined above, TILA provides no right of action against any mortgage servicer. Likewise, courts have overwhelmingly held the HAMP Guidelines do not provide a private right of action.[7] *See*, *e.g.*, *Inman v. Suntrust Mortg., Inc.*, 2010 WL 3516309, at *2 (E.D. Cal. Aug. 24, 2010) ("there is no private right of action provided under HAMP"); *Warner v. Wells Fargo Bank, N.A.*, 2011 WL 2470923, at *3 (C.D. Cal. June 21, 2011) (dismissing with prejudice plaintiff's breach of contract claim based on HAMP); *Vida v. OneWest Bank, F.S.B.*, 2010 WL 5148473, at *5 (D. Or. Dec. 13, 2010) (dismissing breach of contract claim after finding "uniform agreement that HAMP does not provide for a private right of action"); *Orcilla v. Bank of Am., N.A.*, 2010 WL 5211507, at *3 (N.D. Cal. Dec. 16, 2010); *Hoffman v. Bank of Am., N.A.*, 2010 WL 2635773 (N.D. Cal. June 30, 2010) (collecting cases). *But see Marques v. Wells Fargo Home Mortg., Inc.*, 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010).

More specifically, courts have dismissed UCL claims to the extent they were based on violation of HAMP Guidelines. *See*, *e.g.*, *Aleem v. Bank of Am., N.A.*, 2010 WL 532330 (C.D. Cal. Feb. 9, 2010) (dismissing UCL claim); *Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014) (dismissing Pennsylvania unfair competition claims to the extent no other attendant misrepresentation or omission).[8]

### G.    Plaintiff's Claim for Declaratory Relief (Count V) Should Be Dismissed, as Plaintiff Cannot State a Valid Claim Against Shellpoint

---

[7] Even if HAMP Guidelines provided a private right of action, they do not apply to Shellpoint. Unless a loan is held by Fannie Mae or Freddie Mac, the HAMP program is strictly voluntary for mortgage servicers. Shellpoint is not a participating lender. (*See* Miller Decl. ¶ 3.) Consequently, the HAMP guidelines do not apply, and cannot be applied, to Shellpoint.

[8] In *Aleem*, plaintiffs alleged that the defendant bank had violated the UCL by failing to determine the plaintiffs' eligibility for HAMP. 2010 WL 532330 at * 3. The *Aleem* court dismissed the UCL claim, holding explicitly that to the extent the plaintiffs' UCL claim was based on HAMP, plaintiffs failed to state a claim. *Id.* The court reasoned that "[t]he UCL cannot create a private right of action where none exists under the federal statute." *Id.* (citing *Summit Tech, Inc. v. High-Line Med. Instr. Co., Inc.*, 922 F. Supp. 299, 316 C.D. Cal. 1996)). Accordingly, Plaintiff has no claim under UCL.

Plaintiff alleges that a "controversy has arisen and now exists between Plaintiff and class members on the one hand and Shellpoint on the other" because Shellpoint "violates the [LMA] by not complying with [HOBR and TILA]." (FAC ¶ 89.) As such, Plaintiff seeks "a declaration as to whether Shellpoint violates the [LMA]."[9] (*Id.* ¶ 90.)

Declaratory relief is not an independent cause of action, but instead, a form of equitable relief. *See Esso Standard Oil Co. v. Zayas*, 352 F.Supp.2d 165 (D. Puerto Rico 2005), aff'd 445 F.3d 13 (1st Cir. 2006). "[T]he district court may in its discretion refuse declaratory relief if the alternative remedy is more appropriate." *Smith v. Metro. Prop. & Liab. Ins. Co.*, 629 F.2d 757, 759 (2d Cir. 1980). More specifically, where a plaintiff's claim has already ripened into a cause of action and the declaratory relief action would not fully and completely adjudicate the issue presented, the declaratory relief action should be dismissed. *See Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012) (dismissing declaratory judgment claim seeking determination of the validity and enforceability of a contract, where plaintiffs were also pursuing a claim for damages, finding the declaratory relief to be duplicative and the contract claim for damages to be a better and more effective remedy).

In this case, Plaintiff's declaratory relief claim to determine the "rights and duties" of the parties would not fully adjudicate the issues and, in any case, is duplicative of her other claims. Those other claims fully adjudicate the issues between the parties. Thus, this Court should exercise its discretion and dismiss without prejudice Plaintiff's declaratory relief action.

**H.    In the Alternative, Paragraphs 4, 8, 21, 35-40, 49-57, 86-87, 89-90 and Portions of the Prayer for Relief Should Be Stricken as Immaterial, Impertinent, or for Lack of Ascertainability as to the Class Allegations**

**1.    The Court Should Strike Plaintiff's Background Allegations Regarding MHA and HBOR as Immaterial and Impertinent**

---

[9] Plaintiff also very generally seeks "a judicial determination of [the] rights and duties [of plaintiff and class members], and the rights and duties of absent class members." (*Id.*) Other than the alleged violations for HOBR and TILA, it is unclear to which rights and duties Plaintiff refers.

The vague allegations and extensive historical background Plaintiff provides on MHA and HBOR should be stricken under Rule 12(f).  (*See* FAC ¶¶ 35-40.)  In this section of the FAC, Plaintiff alleges the purposes for enacting the respective statutes and the impact of the economic downturn on the real estate and mortgage markets.  These topics are irrelevant to Plaintiff's experiences and claims related to modifying her home mortgage.  More specifically, Plaintiff fails to provide any legal or factual nexus connecting the generalized, conclusory allegations with her own experiences.

As these allegations "could not have any possible bearing" on the subject matter of the litigation (Plaintiff's allegations regarding the fees charged and billing statements issued after she entered into a loan modification agreement), they should be stricken from the FAC.  *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1128 (N.D. Cal. 2010).  These allegations are not only impertinent and immaterial, but also prejudicial.[10]  For one, the allegations portray Shellpoint as being part of the "wave of residential property foreclosures" that caused the economic health of California to suffer, but such assertions have no basis in fact or connection with the claims alleged against Shellpoint.

Simply put, these paragraphs are designed not to describe the course of Plaintiff's dealings with Shellpoint, but to paint a broad, unflattering picture of Shellpoint and the mortgage-lending industry in general.  Such allegations may prejudice a reader against Shellpoint and the industry, but have no probative value whatsoever. The Court should strike paragraphs 35 through 40 as immaterial, impertinent, and prejudicial.

### 2. The Court Should Strike Plaintiff's Class Allegations for Lack of Ascertainability

---

[10] More significantly, Plaintiff may seek to leverage these inflammatory and irrelevant allegations to attempt to open the doors to broad and burdensome discovery into areas that have nothing to do with her own experiences.  Such needless, expensive discovery should not be permitted. *See Bottoni v. Sallie Mae, Inc.*, 2011 U.S. Dist. LEXIS 93634 (N.D. Cal. Aug. 22, 2011) (noting, in the context of a motion to strike, "the obligation to conduct expensive and potentially unnecessary and irrelevant discovery is a prejudice"); *In re Harmonic Sec. Litig.*, 2006 U.S. Dist. LEXIS 90450, at *57 (N.D. Cal. Dec. 11, 2006) (striking irrelevant allegations dressed as "background" material on grounds that "defendants would be prejudiced if they were compelled to respond to these allegations, or to respond to discovery propounded by plaintiffs into any issues beyond those raised in the [claims for relief]").

Even at this stage of the litigation, it is clear from the face of the FAC that Plaintiff's class allegations cannot be maintained and should be stricken.  When a class is unascertainable, it is proper to strike class allegations on a motion to strike.  *See Tietsworth*, 720 F. Supp. 2d at 1146-47 (granting motion to strike class allegations where proposed class included purchasers who had not suffered injury); *Hovsepian v. Apple Inc.*, 2009 U.S. Dist. LEXIS 117562, at *18-19 (N.D. Cal. Dec. 17, 2009) (granting motion to strike class allegations where proposed class included purchasers of computers that did not have defective display screens).

In order for a class to be certified, the class must be adequately defined and ascertainable by reasonable means.  *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 455 (S.D. Cal. May 12, 2014).  A class is sufficiently defined and ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member."  *Id.* (citing *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal.1998)); *see also*, *e.g.*, *Colapinto v. Esquire Deposition Servs.*, 2011 U.S. Dist. LEXIS 308141, at *4 (C.D. Cal., Mar. 8, 2011) (finding class not ascertainable where it included those already reimbursed for allegedly unlawful and deceptive charges); *Gonzales v. Comcast Corp.*, No. 10-CV-01010-LJO-BAM, 2012 WL 10621, at *20 (E.D. Cal. Jan. 3, 2012) report and recommendation adopted, No. 1:10-CV-01010-LJO, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012) (finding class unascertainable where it included individuals who were not injured by alleged conduct).  *See also Williams v. Oberon Media, Inc.*, 468 Fed. Appx. 768 (9th Cir. 2012) (holding the class not precise, objective or presently ascertainable where plaintiffs failed to establish an objective way of determining which program members failed to receive their monthly game or enrolled in the program due to errors in the computer system, as opposed to the members' own errors or preferences).  Courts have found proposed classes to be unascertainable where there is no "common means for establishing injury in fact"—in other words, where that determination would require "individualized inquiry into the factual circumstances relating to each potential class member.  *See*, *e.g.*, *Herskowitz v.*

*Apple, Inc.*, 301 F.R.D. 460, 467-68 n. 17 (N.D. Cal. Aug. 7, 2014) (denying class certification because the class was unascertainable, as the class definition required "an individualized inquiry into the factual circumstances of each customer's transaction," including determining whether a product came in a "usable form," and whether the product was made available within a "reasonable" time).

Furthermore, class actions "must be structured so as to conform in the essential respects to the judicial process." *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 464 (9th Cir. 1973). Accordingly, they cannot be brought on behalf of "those who have suffered no harm at the hands of them against whom they complain," and thus have no standing to sue. *Id.* In reliance on this principle, courts of this District have stricken class allegations where the proposed class is so broad[11] as to include persons who have not suffered any injury.

As noted above, Plaintiff has alleged a statewide class of all borrowers with mortgage loans for real property in California owned or being serviced by Shellpoint, and three subclasses of all persons who, after January 1, 2013, either: received monthly billing statements from Shellpoint without the certain TILA disclosures (Subclass 1); were billed for regular monthly payments in excess of the payments specified in the LMA (Subclass 2); or applied for and received a first lien loan modification and who were charged fees after their application was submitted, in violation of HOBR and HAMP (Subclass 3).

Plaintiff's proposed class encompasses any obligor on a note or mortgage owned and/or serviced by the Shellpoint since January 1, 2013. Even taking all of Plaintiff's generalized, conclusory allegations regarding Trustee Assess, late charges and billing statements as true, this proposed class would encompass thousands of

---

[11] For example, in a case involving vehicles that were allegedly prone to ignite and combust, the court determined a proposed class of all purchasers of that model of car was not ascertainable because many members would not have suffered any injury. *Bishop v. Saab Auto. A.B.*, 1996 U.S. Dist. LEXIS 22890, *12-14 (C.D. Cal. Feb. 16, 1996); *see also Colapinto v. Esquire Deposition Serv.*, 2011 U.S. Dist. LEXIS 30814, at *11-12 (C.D. Cal. Mar. 8, 2011) (holding proposed class that included all California residents who paid for defendant's transcription services was unascertainable because it included purchasers who were unharmed).

members who could not possibly have suffered any injury—namely, those who are current on their mortgage payments and have neither applied for a modification nor been subject to any foreclosure proceeding.  These unascertainable class allegations, which include persons who have suffered no injury, are impermissible.

Furthermore, each of the subclasses lacks ascertainability as it would not be administratively feasible for the Court to determine which individuals would be members of the class.  For example, there is no allegation that the loans serviced by Shellpoint all contain identical promissory notes and deeds of trusts with identical terms and provisions, or that those notes and deeds of trusts were subsequently modified with identical loan modification agreements.  Nor is there any allegation that borrowers with modified loans all had pre-existing foreclosure proceedings prior to their loans being modified.  By way of further example, there is no allegation that subclass 3 is limited to borrowers with owner-occupied residences, despite the fact that HBOR only applies to loans on such properties.  Accordingly, Paragraphs 4, 8, 21, 49-57, 86-87, 89-90, portions of the Prayer for Relief and all references to class allegations should be stricken from the FAC.

## V.   CONCLUSION

For the foregoing reasons, Shellpoint respectfully requests that this Court dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice.  In the alternative, if the entire First Amended Complaint is not dismissed, Shellpoint respectfully requests that the Court strike all class allegations as immaterial and impertinent and for lack of ascertainability.

DATED:  June 8, 2015          BLANK ROME LLP


By:    /s/ Cheryl S. Chang
       Laura E. Vendzules
       Cheryl S. Chang
       Elizabeth B. Kim
       Attorneys for Defendant
       NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT
       MORTGAGE  SERVICING