UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UN BOON KIM,<br><br>                               Plaintiff,<br>  vs.<br>SHELLPOINT PARTNERS, LLC,<br>                              Defendant. | CASE NO. 15cv611-LAB (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

After the Court dismissed portions of the first amended complaint, Plaintiff Un Boon Kim filed a second amended complaint ("SAC"). Defendant Shellpoint Partners, LLC has moved to dismiss it, and to strike class allegations.

In 2004, Kim, along with her late husband Byoung Kug Kim, took out a home loan for $400,000, and signed a promissory note. (SAC, ¶ 10.) The loan was transferred to Bank of America, and later to Resurgent Mortgage Servicing. (*Id*., ¶ 11.) After that, the SAC alleges it was transferred to Shellpoint. In monthly statements it sent Kim, Shellpoint allegedly committed several violations of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601, *et seq.* Specifically, Kim alleges Shellpoint is liable under § 1640(a), which provides remedies against creditors who fail to comply with TILA's requirements. Kim does not raise any claims against Shellpoint in any other capacity. The SAC brings claims only under TILA, and has abandoned all other claims. Plaintiff seeks only statutory damages. The proposed class consists of:

> All persons who have a residential mortgage loan agreement relating to real property located within California and which is owned by Shellpoint as a creditor, and who, after January 1, 2013, Received monthly billing statements from Shellpoint that did not state that the interest rate and monthly payment would change, or the date on which the interest rate would change, or the amount of any late fee should the regular payment due not be paid by a date specified.

(SAC, 8:3–9.) Shellpoint has moved to dismiss, and to strike class action allegations for lack of ascertainability and typicality. As a fallback position, Shellpoint asks that claims be limited in scope, because it only came into existence in March, 2014.

**Legal Standards**

A Rule12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003) (citations and quotation marks omitted).

At the pleading stage, the Court may consider not only the complaint itself, but also documents it refers to, whose authenticity is not questioned, and matters judicially noticed. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). The Court also need not accept as true allegations that contradict properly subject to judicial notice, or

incorporated into the complaint. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

Under Fed. R. Civ. P. 12(f), the Court can strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter," either sua sponte or in response to a motion. In general, the appropriateness of proceeding as a class action is not tested at the pleading stage, but there is no rule preventing this. As the Supreme Court has explained, most of the time determining whether a case can proceed as a class action involves deciding factual and legal questions that are closely tied up with the cause of action itself. *Gen'l Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). That being said, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Id*. *See also Wal-Mart Stores*, Inc. *v. Dukes*, 564 U.S. 338, 350 (2011) (construing *Falcon* as holding that it may sometimes be necessary to look beyond the pleadings to determine whether class treatment was appropriate). When it is clear from the complaint that class actions cannot be maintained, the Court may grant a motion to strike them. *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009).

**Judicial Notice**

Under Fed. R. Evid. 201(c)(2), the Court must take notice if a party requests it and supplies the Court with the necessary information. Shellpoint argues that it is not Kim's creditor,[1] and asks the Court to take judicial notice of documents that it says support that contention. The documents are relevant because, if Shellpoint is correct and the creditor is actually Bank of New York Mellon, then Kim has no TILA claim against Shellpoint and the case must be dismissed. See 15 U.S.C. § 1641(f)(1) (servicers of loans are not liable under TILA unless they are also the owners of the loans). *See also Lisnawati v. Bank of N.Y. Mellon*, 2009 WL 1468793 at *2 (N.D. Cal., May 26, 2009) (claims under TILA against

/ / /

---

[1] Although the parties use the term "lender," what they mean is the creditor. *See* 15 U.S.C. § 1602(g) (definition of "creditor").

escrow holder and trustee were subject to dismissal, because it was not a "creditor" within the meaning of TILA).

The documents are:

Exhibit A: A note dated March 17, 2004.

Exhibit B: The executed deed of trust, recorded on March 25, 2005.

Exhibit C: An assignment dated March 3, 2010 and recorded April 5, 2010 with the San Diego County Recorder's Office.

Exhibit D: An assignment dated June 10, 2010 and recorded June 18, 2010 with the San Diego County Recorder's Office.

Exhibit E: An assignment dated June 16, 2011 and recorded June 20, 2011 with the San Diego County Recorder's Office.

Exhibit F: A notice of transfer of servicing, dated February 14, 2014 that Shellpoint sent to Kim.

Exhibit G: Correspondence dated April 21, 2014 that Shellpoint sent to Kim.

Kim does not object to the Court's taking notice of Exhibits A and B. She raises essentially the same objections to all the rest. She does not object to the Court's taking notice of the existence of Exhibits C through G, but objects to the Court taking notice of disputed facts they contain. (Opp'n (Docket no. 30) at 4:20–22.) This objection is beside the point, however, because the point of taking notice is to show that these assignments were filed with the recorder, a fact Kim does not dispute. The documents are not being offered to prove any assertions they may contain.

Acknowledging and filing an assignment of a deed of trust with the county recorder makes it effective. *See* Cal. Civ. Code. § 2932.5. The deed of trust, assignments, and other documents that were filed and recorded amount to facts of independent legal significance, and the Court is taking notice of them for that purpose. *Compare United States v. Rubier*, 651 F.2d 628, 630 (9th Cir. 1981) (per curiam). Courts routinely take judicial notice of such documents. *See, e.g.*, *Spitzer v. Aljoe*, 2016 WL 3275148 at *4 (N.D. Cal., June 15, 2016); *Allshouse v. Caliber Home Loans, Inc.*, 2014 WL 1259420, slip op. at *1–*2 (C.D. Cal., Oct. 29, 2014) (citing cases); *Roach v. Snook*, 2014 WL 7467000, at *2 (D. Or. Jan. 5, 2014).

/ / /

Similarly, if Shellpoint notified Kim of something in correspondence, the document would show she was notified of it, regardless of whether it was true.

Because Kim does not object to the Court's taking notice of Exhibits A and B, the request is **GRANTED** as to these two. That Exhibits C through E are documents filed with the County Recorder is a fact that can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2).

Exhibits F and G are not the kinds of documents that are subject to notice under 201(b)(2), and the Court cannot formally take notice of them under Rule 201. That being said, Exhibit F is indirectly referred to in the complaint. (SAC, ¶ 11 (alleging an assignment of the loan from Resurgent Mortgage Servicing to Shellpoint).) Because Kim does not challenge the document's authenticity, the Court can rely on this document for the limited purpose of showing that Shellpoint told Kim it was the mortgage's servicer.

This leaves only Exhibit G, a letter Shellpoint sent Kim regarding eligibility for the Home Affordable Modification Agreement. (HAMP) The letter identifies Bank of New York Mellon as the lender, and that statement is the reason it is being offered. Shellpoint argues that the SAC refers to it. But all the SAC says is that in its HAMP correspondence, Shellpoint never referred to itself simply as a servicer rather than a lender. (SAC, ¶ 12.) Because Kim does not dispute this document's authenticity, the Court can rely on it for the limited purpose of showing what Shellpoint said to Kim. The Court does not rely on Exhibits F and G for the truth of anything they say. And, in the end, they are only marginally relevant if at all.

**Whether Shellpoint Is the Creditor**

The parties have pointed to documents suggesting both that Shell point is the lender (*see, e.g.*, SAC, Ex. 2), and that Shellpoint is not the lender. (Mot. to Dismiss, Ex. G.) To the extent the Court is being asked to resolve factual disputes or resolve questions of credibility, it cannot do so. That being said, the legal effect of agreements and other documents is a question of law, *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 749 (9th Cir. 2005), and can be resolved at this stage of litigation. Here, the Court has the benefit of

property records pertaining to the subject property during the time period covered by the SAC. Kim has agreed the Court can take judicial notice of these documents' existence, and the Court has done so.

Both the SAC and Shellpoint's Exhibit A agree that Moneyline Lending Services, Inc. was the original lender. As to this, there is no dispute. Exhibit B is a deed of trust appointing Fidelity National as trustee, and the Mortgage Electronic Registration Systems ("MERS") as beneficiary. The deed of trust identifies Moneyline as the lender. Exhibit C, a substitution of trustee and assignment of the deed of trust, appoints Recontrust Company, N.A. as trustee in place of Fidelity National, and Bank of New York Mellon as beneficiary in place of MERS. The assignment transfers "all beneficial interest" under the earlier deed of trust to Bank of New York Mellon. Exhibit D purports to do the same thing Exhibit C did.[2] And Exhibit E is a transfer between Bank of New York Mellon either in two different capacities or under two different names. Exhibit F notifies Kim that Resurgent Mortgage Servicing will become part of Shellpoint.

The legal effect of these documents is governed by California property law. "In California, the financing or refinancing of real property generally is accomplished by the use of a deed of trust." *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 994 (2016), as modified (Mar. 11, 2016) "Under a deed of trust, the borrower, or 'trustor,' conveys nominal title to property to an intermediary, the 'trustee,' who holds that title as security for repayment of the loan to the lender, or 'beneficiary.'" *Id*. (internal quotation marks and citation omitted). "There are three parties in the typical deed of trust: the trustor (debtor), the beneficiary (lender), and the trustee." *Biancalana v. T.D. Service Co.*, 56 Cal. 4th 807, 813 (2013).

Under California law, then, the effect of a lender's assigning benefits under a deed of trust is that the beneficiary steps into the lender's shoes and succeeds to the lender's rights. Looking at the face of the documents, their effect is that, through at least June 16, 2011, Bank of New York Mellon — not Shellpoint — was the creditor.

---

[2] Shellpoint gives no explanation for the apparently duplicate assignments. It may be that the parties forgot about the first assignment and executed and recorded a second. But in any event it does not change the analysis or outcome at all.

The Court is aware, however, that the documents on their face may not reflect the underlying reality. MERS has sometimes been identified as a nominal or sham beneficiary for purposes of deeds of trust. *See, e.g., Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011). This is done so that mortgage holders can sell the mortgage to investors without having to record the transaction. *See Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 164 (Kan. 2009) (citing *MERS, Inc. v. Neb. Dept. of Banking*, 704 N.W.2d 784 (2005)). But even if that is what happened here, and even if the Court had some reason to question MERS's status as beneficiary, *see McGuire v. Recontrust Co., N.A.*, 2013 WL 3863903 at *9 (E.D. Cal., July 24, 2013), MERS did not end up as the beneficiary. Instead, it assigned its interest as beneficiary to Bank of New York Mellon. *See Avila v. Wells Fargo Bank, N.A.*, 2016 WL 7425925, at *3 (N.D. Cal., Dec. 23, 2016) (holding that, under California law, a mortgage registry such as MERS named as beneficiary under a deed of trust can validly assign all the lender's rights). *See also Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163 (9th Cir. 2013) (under Arizona law, MERS' assignment of benefits to Bank of New York Mellon gave the bank authority to initiate judicial sale of property).[3]

Under 15 U.S.C. § 1602(g), "creditor" refers *only* to a person to whom the debt "is initially payable on the face of the evidence of indebtedness . . . ."[4] Here, this means that as of June 20, 2011, Shellpoint was not the creditor for purposes of TILA.

The problem for Shellpoint is that the chain of title stops there. There is no additional document showing that Bank of New York Mellon was the creditor in 2014 and 2015, when the alleged TILA violations occurred. This leaves open the possibility that Shellpoint acquired beneficial interest in the note in time to commit the alleged violations. So at this

---

[3] Arizona's law, which does not require possession of the original note to entitle a beneficiary to all benefits under a deed of trust — including the right to non-judicial foreclosure when warranted — is similar to California's. *See id.* at 1168; *Hinojosa v. Wells Fargo Bank*, 2012 WL 3313554, at *3 (holding that California law does not require the foreclosing entity to produce the original promissory note).

[4] This section includes some other qualifications, *i.e.*, that the person regular extend consumer credit payable in more than four installments. But there does not appear to be any dispute as to whether Bank of New York Mellon satisfies those other provisions. And even if there were, Shellpoint does not satisfy this definition.

stage of the litigation, the Court accepts the SAC's allegations that Shellpoint was the creditor and not solely the loan servicer.

**Merits of TILA Claims**

The SAC alleges Shellpoint violated TILA by not stating the amount of any late fee she would be charged, in violation of 12 C.F.R. §1026.41(d)(1)(ii). Shellpoint cites the statements in question, arguing that they disclose the fact that a late fee may be charged. But Kim is correct; while they disclose the fact that a fee may be charged, they fail to disclose the *amount* of the fee. This claim is not subject to dismissal at this time.

The SAC also alleges Shellpoint violated 12 C.F.R. § 1026.41(d)(7)(iii), because in the required periodic statement, Shellpoint failed to include the date after which the interest rate could next change. Shellpoint argues that it was not required to make such a disclosure, because her loan had a set rate schedule for the life of the loan. (*See* SAC, Ex. 1 at 1.3 (Docket no. 27-1 at 4).) Kim apparently concedes this point, because she does not mention anything about it in her opposition. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (failure to defend claim in opposition to motion to dismiss amounted to abandonment of claim); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) (citing *Locricchio v. Office of U.S. Trustee*, 313 Fed. App'x 51, 52 (9th Cir. 2009)) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.")

**Class Allegations**

Because Kim's claim regarding disclosure of interest rate changes is being dismissed, she cannot represent a class that is making such claims.

Shellpoint argues that many, perhaps most, of the class members were not financially harmed by failure to disclose late fees. This is not a defense to a claim for statutory damages, although it could result in denial of class certification. *See London v. Wal–Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (noting that actual economic harm might be required to show that a class action was a superior method of litigating claims).

/ / /

Shellpoint's motion also argued that Kim does not meet the typicality requirement under Fed. R. Civ. P. 23 because Shellpoint is not her lender. While the Court cannot make that determination at this time, this is potentially a case-ending defense for Shellpoint. " A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 557 (D. Idaho 2010) (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3rd Cir. 2006)). Although the parties did not brief this issue, it is clearly a danger here.

Although Shellpoint argues it did not exist before March, 2014, this fact is not before the Court and the Court will not limit the scope of the class on that basis at this time. Shellpoint is not precluded from raising the issue later.

**Conclusion, Order, and Admonition**

The motion to dismiss is **GRANTED** as to Kim's claim for violation of 12 C.F.R. § 1026.41(d)(7)(iii) (regarding notification of the date when her interest rate might change), but **DENIED** as to her claim for violation of 12 C.F.R. §1026.41(d)(1)(ii) (regarding notification of late fees). The request to strike class action claims is **GRANTED** as to claims for violation of 12 C.F.R. § 1026.41(d)(7)(iii), but otherwise denied. That being said, the surviving class claims are on shaky ground, for the reasons discussed above. Because the class definition is now defective, the SAC is **DISMISSED WITH LEAVE TO AMEND**. Within 14 calendar days of the date this order is docketed, Kim may file a third amended complaint. If more time is needed, Kim should request it by *ex parte* application.

Fed. R. Civ. P. 11(b)(3) and (4) provide that every time parties present motions, pleadings, or any other documents to the court, they are making certain certifications to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . ." Among the certifications they are making are that the factual contentions or denials of factual contentions are warranted. *Id*. at 11(b)(3) and (4). Here, that means when Shellpoint represents to the Court that it is and was only the servicer and never the lender or creditor, that those representations are warranted on the evidence, and

that Shellpoint knows this because it has made an inquiry that is reasonable under the circumstances. It also means that when Kim represents to the Court that Shellpoint is and was the lender and creditor, her contentions have evidentiary support. And it means her denials of Shellpoint's representations are warranted on the evidence. Specifically, Kim should have evidence either that ownership of the loan was never effectively transferred to Bank of New York Mellon; or that June 20, 2011, ownership was transferred to Shellpoint. Both parties should bear in mind that because ownership of interests in real property is evidenced by records, assertions of ownership or non-ownership that contradict recorded documents are insufficient.

Under the circumstances, "an inquiry reasonable under the circumstances" includes, at a minimum, each party's thorough search of its own records as well as a search of property records pertaining to the subject property. If Shellpoint's status as a lender or creditor remains a factual issue going forward, both parties should be prepared to show that they have undertaken enough research to be confident that their position has adequate evidentiary support. If this continues to be litigated, the Court may raise the issue *sua sponte*.

**IT IS SO ORDERED**.

DATED: March 14, 2017

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge